191 N.J. Super. 524 (1983)
468 A.2d 253
REMEDIAL EDUCATION AND DIAGNOSTIC SERVICES, INC., PLAINTIFF-APPELLANT,
v.
ESSEX COUNTY EDUCATIONAL SERVICES COMMISSION, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1983.
Decided October 27, 1983.
*525 Before Judges ANTELL, JOELSON and McELROY.
Stephen N. Dratch argued the cause for appellant (Greenberg, Margolis, Ziegler & Schwartz, attorneys; Mark S. Tabenkin on the brief).
*526 Alfred E. Ramey, Jr., Deputy Attorney General, argued the cause for respondent Commissioner of Education (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; Deborah T. Poritz, Deputy Attorney General, of counsel; Alfred E. Ramey, Jr. on the brief).
Edward F. Petit-Clair argued the cause for respondent Essex County Educational Services Commission (Petit-Clair & Graves, attorneys; Edward F. Petit-Clair of counsel; William E. Graves on the brief).
William S. Greenberg argued the cause for intervenor-respondent NJEA and ESTA (Greenberg, Kelley & Prior, attorneys; James F. Schwerin of counsel and on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
This is an action for breach of contract. Defendant is a public body, and the narrow question presented is whether it was within its statutory powers to enter into the contract on which the suit is based.
Defendant was created pursuant to N.J.S.A. 18A:6-51 et seq.
for the purpose of carrying on programs of educational research and development and providing to public school districts such educational and administrative services as may be authorized pursuant to rules of the State Board of Education. [N.J.S.A. 18A:6-51(a)].
Acting under the foregoing statute defendant has entered into contracts with a number of public school districts to provide auxiliary and remedial services for handicapped pupils. On September 17, 1981 plaintiff and defendant entered into an agreement whereby plaintiff was to furnish the services and programs which defendant was obligated to supply the member school districts. In reliance thereon plaintiff incurred substantial start-up costs and rendered services for a period of approximately seven weeks for which it here seeks to be paid. On defendant's motion an order for summary judgment was entered in favor of defendant and plaintiff appeals. The basis of the trial *527 court's determination was that the contract between the parties was, as to defendant, "ultra vires in the primary sense permitting no payment for services pursuant to that contract...." We agree and affirm.
The rule is clear:
[M]unicipal bodies in this State have no powers other than those delegated by the Legislature, and must perform their prescribed activities within the statutory ambit. Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, 85 (1953). Although a public body may make contracts, it can only do so within its express or implied authority. Midtown Properties, Inc. v. Madison Tp., 68 N.J. Super. 197, 208 (Law Div. 1961), aff'd 78 N.J. Super. 471 (App.Div. 1963). An act wholly beyond the jurisdiction of a municipal corporation is ultra vires in the primary sense and utterly void. [Sinclair Refining Co. v. County of Bergen, 103 N.J. Super. 426, 433 (App.Div. 1968)]
Moreover, it is settled that "[w]here there exists reasonable doubt as to whether such power is vested in the administrative body, the power is denied." In re Jamesburg High School Closing, 83 N.J. 540, 549 (1980).
In Sinclair, supra, the county was authorized by statute to enter into contracts with third parties to procure for municipalities within its boundaries any "service or facility" which the municipality might otherwise lawfully provide to its inhabitants or others. It was there held that "service or facility" did not encompass materials and supplies, and the contract there in question for the purchase of gasoline was held to be "absolutely void," and damages nonrecoverable.
From the enabling legislation before us we see only that defendant was brought into existence for the purpose of "providing" the educational services to the public school districts. Nowhere is it suggested that the obligation to provide such services may be subcontracted or delegated to a private agency. Had the Legislature so intended it would have said so as it did with respect to local school districts. In N.J.S.A. 18A:46-19.7 it expressly provided that, as to securing services for the handicapped:
A board of education may contract with an educational improvement center, an educational services commission or other public or private agency approved *528 by the commissioner other than a church or sectarian school, for the provision of examination, classification and speech correction services required by this act.
Although we know of no explanation in the legislative history of this enactment as to why the lawmakers differentiated between the powers granted to a local board and an educational services commission it appears, nevertheless, that a reasoned basis for the distinction exists. In the case of a local board, the number of pupils in need of a particular auxiliary or remedial service could well be so small that the interests of teaching efficiency and economy would be better served by contracting on a per pupil basis with a private agency rather than by enlarging its faculty to provide the needed services directly. An educational services commission, on the other hand, under contract with a large number of school districts and therefore serving a large pupil population, would probably experience a lower per pupil cost by providing services directly rather than through subcontracts with private agencies.
While it is by no means clear that these considerations actually motivated the legislators to allow the local boards to subcontract while withholding such authority from educational services commissions, its logic cannot be overlooked in determining whether the distinction which they drew was inadvertent or intentional. In our view the omission from the enabling legislation was intentional, and it is fundamental that what the Legislature pointedly omits the courts will not supply. Craster v. Board of Commissioners, Newark, 9 N.J. 225, 230 (1952). We are not free to read unwarranted meanings into an unambiguous statute "even to subserve a supposedly desirable policy not effectuated by the act as written." R.H. Macy & Co. Inc. v. Director, Div. of Taxation, 77 N.J. Super. 155, 173 (App. Div. 1962), aff'd 41 N.J. 3 (1963).
Finally, "a power or duty delegated by statute to an administrative agency cannot be subdelegated in the absence of any indication that the Legislature so intends." Mercer Coun. # 4, *529 N.J. Civ. Serv. v. Alloway, 119 N.J. Super. 94, 99 (App.Div.), aff'd 61 N.J. 516 (1972). As we said more recently in In re North Jersey Dist. Water Supply Comm'n, 175 N.J. Super. 167, 206 (App.Div.), certif. den. 85 N.J. 460 (1980); "[t]his is especially true when the agency attempts to subdelegate to a private person or entity, since such person or entity is not subject to public accountability."
We are asked by plaintiff to note the manifest equity of its claim and in the event we find no power in defendant to enter the contract that our ruling be made prospective only, not retrospective. We cannot accede to this request. We have held that the agreement could have come about only if defendant was empowered to make such contracts, and further held that there was no such power and that the contract therefore could not have been formed. To accomodate plaintiff now we would have to blind ourselves to the legislative intent and enforce a contract we said could not exist. Although we are not insensitive to the seeming harshness of our result it is not amiss to note the following observations which were made in State v. Erie Railroad Co., 23 N.J. Misc. 203, 213, 42 A.2d 759 (Sup.Ct. 1945):
`Statutes delegating powers to public officers must be strictly construed, and all persons dealing with public officers must inform themselves as to their authority, and acts which are within the apparent but in excess of the actual authority of officers will not bind the government which they represent, unless ratified by it.'
....
The defendant knew or should have known the limitations of the powers of the state's agents. The rule is stated as follows in 59 Corp. Jur. 173: `The powers of state officers being fixed by law, all persons dealing with such officers are charged with knowledge of the extent of their authority or power to bind the state and are bound at their peril to ascertain whether the contemplated contract is within the power conferred.'
Also see Lincoln Highway Realty v. State, 128 N.J. Super. 35, 42 (Ch.Div. 1974), and authorities there cited.
Affirmed.