642 A.2d 419

GILLIAN IMPEY, PETITIONER–APPELLANT, v. BOARD OF EDUCATION OF THE BOROUGH OF SHREWSBURY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 22, 1994—Decided May 24, 1994.

Before Judges MICHELS, SKILLMAN and KESTIN.

*Stephen B. Hunter* argued the cause for appellant (*Klausner, Hunter, Cige & Seid,* attorneys; *Mr. Hunter,* of counsel and on the brief).

*Nathanya G. Simon* argued the cause for respondent (*Schwartz, Simon & Edelstein,* attorneys; *Ms. Simon,* of counsel; *David L. Rosenberg* and *Ms. Simon,* on the brief).

*Aileen M. O'Driscoll* argued the cause on behalf of *amicus curiae* New Jersey Education Association (*Zazzali, Zazzali, Fagella & Nowak,* attorneys; *Tanya Pushnack Friedman* and *Richard A. Friedman,* on the brief).

*Sheila Dow Ford,* Director, Legal Department, New Jersey School Boards Association, filed a brief on behalf of *amicus curiae* New Jersey School Boards Association (*Kim Belin,* on the brief).

*Deborah T. Poritz,* Attorney General, filed a statement in lieu of brief on behalf of respondent State Board of Education (*David Earle Powers,* Deputy Attorney General, on the statement).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Appellant was employed by respondent Board of Education of the Borough of Shrewsbury (the Board) as a part-time speech correctionist and had acquired tenure in that position under *N.J.S.A.* 18A:28-5. In July of 1990, the Board voted to abolish appellant's position and to contract with the Educational Services Commission (ESC) of Monmouth County to provide speech correction services for the district's pupils during the 1990–91 school year. The Board agreed to pay the ESC $8,000 for speech correction services, compared to the slightly more than $20,000 salary it would have had to pay appellant.

Appellant filed a petition of appeal with the Commissioner of Education, asserting that the Board's actions violated her tenure rights and seeking reinstatement. An Administrative Law Judge (ALJ) concluded that a local board of education has the statutory authority to contract with an ESC to provide speech correction services and that the Board's sole motive in contracting with the Monmouth County ESC to provide these services, and in abolishing appellant's position, had been to save money. Consequently, the ALJ decided that the Board's actions did not violate appellant's tenure rights. The ALJ's initial decision was affirmed by the Commissioner of Education and the State Board of Education (the State Board).

In reviewing the State Board's decision, the threshold question is whether a local board of education has the statutory authority to contract with an ESC to provide speech correction services for its pupils. Each board of education has a responsibility "to provide suitable facilities and programs of education" for all handicapped children, *N.J.S.A.* 18A:46–13, which includes children who are "communication handicapped." *N.J.S.A.* 18A:46–1. A board of education may discharge its responsibility of providing special services for its handicapped pupils in a variety of ways, including:

    a.  A special class or classes in the district, . . .;

    b.  A special class in the public schools of another district in this State or any other state in the United States;

c. Joint facilities ... to be provided by agreement between one or more school districts;

d. A jointure commission program;

e. A State of New Jersey operated program;

f. Instruction at school supplementary to the other programs in the school. . . .

[*N.J.S.A.* 18A:46–14a to –14f.]

*See also N.J.S.A.* 18A:46–5.1; *N.J.S.A.* 18A:46–19.7.

An ESC is an agency comprised of at least five member school districts in one or more counties, *N.J.S.A.* 18A:6–52(a), one of the functions of which is to provide "public school districts [with] such educational and administrative services as may be authorized pursuant to rules of the State Board of Education." *N.J.S.A.* 18A:6–51(a); see *Remedial Educ. & Diagnostic Servs., Inc. v. Essex County Educ. Servs. Comm'n,* 191 *N.J.Super.* 524, 526–28, 468 *A.*2d 253 (App.Div.1983), *certif. denied,* 97 *N.J.* 601, 483 *A.*2d 139 (1984). One of the educational services which the State Board's rules specifically authorize an ESC to provide is a program for "pupils with educational disabilities," *N.J.A.C.* 6:28–7.1(a), who include the communication handicapped. See *N.J.A.C.* 6:28–1.3, defining a "pupil with an educational disability" to mean a pupil eligible for "special education" under *N.J.A.C.* 6:28–3.5, and *N.J.A.C.* 6:28–3.5(d)(4), indicating that pupils eligible for "special education" include the "communication handicapped." [1] When an ESC decides to contract with a school district to provide a special education program, see *N.J.S.A.* 18A:6–63(a), it may employ such teachers and other employees as are required to discharge this responsibility. *N.J.S.A.* 18A:6–65. Therefore, we are satisfied that a facility or program of special education provided by an ESC, such as speech correctional services, is a "[j]oint facilit[y] ... provided by agreement between one or more school districts" within the intent of *N.J.S.A.* 18A:46–14(c), as well as an

---

[1] The parties stipulated that the State Board has authorized the Monmouth County ESC to provide special education services to public school districts.

"educational service" authorized pursuant to rules of the State Board within the intent of *N.J.S.A.* 18A:6–51(a).

■ Appellant argues that the Department of Education's rules governing special education preclude a local board of education from contracting with an ESC to provide such services. See *N.J.A.C.* 6:28–1.1 to –11.13. However, these rules expressly provide that a local board may discharge its responsibility of providing services for handicapped children, including the services of speech correctionists, through "joint agreements" with other districts, *N.J.A.C.* 6:28–1.1(f), administered in accordance with "contractual agreement[s] . . . between district boards of education." *N.J.A.C.* 6:28–1.1(g)(2). Moreover, as previously noted, the State Board's rules expressly authorize a local school district to contract with an ESC to provide educational services for communication handicapped pupils. *N.J.A.C.* 6:28–7.1(a). And even if there were reasonable doubt regarding the intent of the rules governing special services for handicapped pupils, we would defer to the agency's interpretation of those rules. *See Simon v. Board of Trustees, Police & Firemen's Retirement Sys.*, 233 *N.J.Super.* 186, 195, 558 *A.*2d 490 (App.Div.), *certif. denied,* 117 *N.J.* 652, 569 *A.*2d 1348 (1989). In any event, since *N.J.S.A.* 18A:46–14(c) and *N.J.S.A.* 18A:6–51(a) provide the requisite authorization for a local board to contract with an ESC to provide services for its handicapped pupils, the Department could not adopt a rule or regulation withdrawing a power which the Legislature has conferred. *Cf. In re Uniform Admin. Procedure Rules,* 90 *N.J.* 85, 94, 447 *A.*2d 151 (1982).

■ Appellant argues that even if the Board has the authority to contract with an ESC to provide educational services for its handicapped pupils, it violated her tenure rights under *N.J.S.A.* 18A:28–5 by contracting with the Monmouth County ESC to provide the speech correction services which she previously had performed. However, the Legislature has authorized the abolition of teaching positions for reasons of economy and efficiency. *N.J.S.A.* 18A:28–9 provides:

Nothing in this title or any other law relating to tenure of service shall be held to limit the right of any board of education to reduce the number of teaching staff members, employed in the district whenever, in the judgment of the board, it is advisable to abolish any such positions for reasons of economy or because of reduction in the number of pupils or of change in the administrative or supervisory organization of the district or for other good cause upon compliance with the provisions of this article.

The Board's decision to contract with an ESC to provide the speech correction services previously performed by appellant eliminated the need for the position of speech correctionist within the district. Moreover, appellant stipulated that the Board would save more than $12,000 per year by contracting with an ESC to provide these services. Therefore, we are satisfied that the Board properly abolished appellant's position of speech correctionist "for reasons of economy" and thus did not violate her tenure rights.[2] *Cf. Klinger v. Board of Educ. of Cranbury,* 190 *N.J.Super.* 354, 357, 463 *A.*2d 948 (App.Div.1982) ("[R]eduction in force is entirely within the authority of the board if done for reasons of economy."), *certif. denied,* 93 *N.J.* 277, 460 *A.*2d 678 (1983).

The Board's decision to contract with an ESC to provide speech correction services is significantly different from the administrative action involved in *Viemeister v. Board of Educ. of Prospect Park,* 5 *N.J.Super.* 215, 68 *A.*2d 768 (App.Div.1949), in which a local board abolished the position of school principal, terminated the incumbent, and established a position of "teaching principal"

---

[2] The New Jersey Education Association has filed an *amicus curiae* brief which argues that appellant's tenure as a speech correctionist was statutorily transferred to the Monmouth County ESC, and hence that she is entitled to a tenured position with that agency. However, appellant did not present this claim to the Department of Education or to this court. Consequently, it is not properly before us on this appeal. *See Nieder v. Royal Indemn. Ins. Co.,* 62 *N.J.* 229, 234, 300 *A.*2d 142 (1973). An *amicus curiae* must accept the case as presented by the parties. *Bethlehem Township Bd. of Educ. v. Bethlehem Township Educ. Ass'n,* 91 *N.J.* 38, 48–49, 449 *A.*2d 1254 (1982). Moreover, the Monmouth County ESC, which would be a necessary party to an action involving a claim by appellant to tenure with that entity, *see Board of Directors of Ajax Electrothermic Corp. v. First Nat'l Bank of Princeton,* 33 *N.J.* 456, 463, 165 *A.*2d 513 (1960), was not named as a party either in the proceedings before the Department of Education or in this appeal.

which it appointed one of the school's teachers to fill. In affirming the State Board's decision invalidating the abolition of the position of school principal, we stated:

> The fact that the formal resolutions adopted by the Board speak in terms of abolition of the position of principal and creation of a new position of "teaching principal," which finds no recognition in the tenure statutes, does not appear to be significant. We look to the substance rather than the form and, in substance, the principalship was continued but transferred to [the newly appointed "teaching principal"].

*Id.* at 218, 68 *A.2d* 768.

Therefore, while *Viemeister* involved the re-titling of the position of principal in order to remove a tenured incumbent, this case involves a statutorily authorized administrative change in the method of providing an educational service for the sole purpose of saving money.

In sum, a local board has the authority both to contract with an ESC to provide educational services for the handicapped and to abolish a teaching position "for reasons of economy." We are satisfied that the Board's decision to contract with the Monmouth County ESC to provide speech correction services and its consequent abolition of appellant's tenured position constituted a proper exercise of these statutory powers.

Affirmed.