667 A.2d 349

GINO ROMANNY, PETITIONER, v. STANLEY BALDINO
CONSTRUCTION CO., RESPONDENT–RESPONDENT, v.
NEW JERSEY RE–INSURANCE CO., APPELLANT.

Argued September 12, 1995—Decided December 5, 1995.

*Francis T. Giuliano* argued the cause for appellant.

*John J. Baldino* argued the cause for respondent.

The opinion of the Court was delivered by

STEIN, J.

This appeal presents a challenge to the determination of the Division of Workers Compensation that New Jersey Re–Insurance Co. (Re–Insurance) must provide workers' compensation coverage for injuries sustained by an employee of Stanley Baldino Construction Co. (Baldino). The employee, Gino Romanny (Romanny), was injured after the expiration of Baldino's initial policy but before the effective date of Baldino's renewal policy. The parties submitted conflicting affidavits to the workers' compensation judge concerning the timeliness of Baldino's mailing of the renewal deposit premium. Re–Insurance asserted that the renewal premium was not received until December 9, 1987. Accordingly, Re–Insurance renewed Baldino's policy on December 9, 1987, two days after the accident that gave rise to the employee's claim for compensation benefits. Baldino claimed that its payment of the premium was timely. Without an evidentiary hearing, the workers' compensation judge determined that Re–Insurance was required to provide coverage.

In an unreported opinion, the Appellate Division affirmed the order mandating coverage, concluding that the carrier had violated the "letter and spirit" of the New Jersey Workers' Compensation Plan (Plan). See *N.J.S.A.* 34:15–89. Specifically, the Appellate Division noted that Re–Insurance had demanded payment of the renewal premium by November 28, 1987, five days prior to the initial policy's expiration date, whereas the Plan requires renewal if the appropriate premium is paid at any time prior to the renewal date. Noting that the carrier had not reminded the insured of the impending lapse between November 28 and December 3, 1987, the Appellate Division concluded that Re–Insurance had attempted to "shed the risk," rather than use its "best efforts

to effect insurance." We granted Re–Insurance's Petition for Certification, 142 *N.J.* 448, 663 *A.*2d 1355 (1995).

## I

We extract our summary of the facts from the certifications submitted by the parties to the Division of Workers Compensation. Re–Insurance had issued a workers' compensation policy to Baldino that expired at 12:01 a.m. on December 3, 1987. On October 29, 1987, Re–Insurance issued a renewal quotation to Baldino offering to renew its policy for an annual premium of $16,427, and informing Baldino that coverage would lapse unless a "deposit premium" (equal to one-half the annual premium) was received by November 28, 1987. The renewal quotation contained this statement:

> The captioned Workers' Compensation policy will expire at 12:01 A.M. on 12/03/87. If required, a renewal policy will be issued *provided* the deposit premium is received in this office prior to the indicated due date. * * * *IMPORTANT* NO FURTHER REQUESTS WILL BE SENT FOR THE DEPOSIT PREMIUM QUOTED ABOVE AND NO POLICY WILL BE ISSUED UNLESS THE FULL DEPOSIT PREMIUM IS PAID. PLEASE BE GUIDED ACCORDINGLY.

Because Re–Insurance did not receive Baldino's deposit premium by December 3, 1987, it issued on that date a notice to Baldino stating that the deposit premium had not been received, that the prior policy expired at 12:01 a.m. on December 3, 1987, and that "no renewal coverage is in effect." On December 7, 1987, Romanny sustained the injury that led to his filing of a workers' compensation claim.

The parties sharply dispute the facts concerning payment of the renewal deposit premium. According to the certification filed by Baldino, on November 26, 1987, it mailed to Re–Insurance a check dated November 26, 1987 and numbered 1775 for $8,214, the amount of the deposit premium on the renewal policy. On an unspecified date, Baldino mailed a second check to Re–Insurance, also dated November 26, 1987, and numbered 1776, in the amount of $11,903 and representing the balance due on the prior policy calculated on the basis of an audit. Baldino's certification alleged

that on December 8, 1987, its bookkeeper received the notice from Re–Insurance that the deposit premium on the renewal policy had not been received. She asserted that she telephoned Re–Insurance and was instructed to stop payment on the deposit premium check and issue a new check. The bookkeeper's certification alleges that on December 8, 1987, she stopped payment on the renewal premium check (and apparently on the check for the audit premium as well), and on the same day sent replacement checks numbered 1782 and 1783, in the same amounts as the original checks, to Re–Insurance by Federal Express. Baldino asserts that it received back the original checks from Re–Insurance on December 11, 1987.

According to Re–Insurance's certifications and briefs, it received from Federal Express the two replacement checks numbered 1782 and 1783 on December 9, 1987, and also received on that day the initial renewal deposit premium check in an envelope postmarked December 8, 1987. Re–Insurance received the initial audit premium check on December 10, 1987, in an envelope postmarked December 9, 1987. Because Re–Insurance's practice was to effect coverage on the day after an insured's premium payment had been mailed, Re–Insurance issued its renewal policy to Baldino effective as of 12:01 a.m. on December 9, 1987. The Plan authorizes insurers to defer the effective date of renewal insurance until 12:01 a.m. on the day following *receipt* of payment, which would have permitted Re–Insurance to issue the renewal policy effective December 10, 1987. *New Jersey Workers' Compensation & Employers' Liability Insurance Manual,* Part Three, § 14, ¶ 11 (Jan. 1, 1981). Because Romanny's accident occurred on December 7, 1987, during the period between the expiration of the original policy and the effective date of the renewal policy, Re–Insurance disclaimed coverage with respect to Romanny's compensation claim.

In the workers' compensation claim proceeding initiated by Romanny, Baldino asserted a claim for coverage against Re–Insurance. The workers' compensation judge denied Re–Insur-

ance's motion to dismiss Baldino's claim, concluding on the basis of the conflicting certifications that the "equities of the case" required Re–Insurance to provide coverage. Re–Insurance's motion for reconsideration of the coverage determination also was denied.

Although the Appellate Division acknowledged that a testimonial hearing ordinarily would have been required to ascertain the credibility of Baldino's assertion that its mailing of the renewal premium was timely, that court determined that Re–Insurance's conduct in respect of the renewal policy violated "both the letter and spirit of the Plan," and ordered Re–Insurance to provide coverage for Romanny's claim irrespective of Baldino's alleged delay in forwarding the renewal deposit premium. In the Appellate Division's view, Re–Insurance's notice requiring payment of the renewal deposit premium on November 28, 1987, five days prior to the initial policy's expiration date, would have been inconsistent with the Plan unless Re–Insurance also had sent a reminder notice during the five days to alert the insured to the pending lapse. Because no reminder notice was sent, the court viewed Re–Insurance's conduct as an impermissible attempt to "shed the risk," in conflict with its overriding duty under the Plan to use its best efforts to effectuate insurance coverage.

## II

The legislative and regulatory scheme governing the entitlement of workers to workers' compensation benefits mandates that employers assure the availability of those benefits for their injured workers. Pursuant to *N.J.S.A.* 34:15–71, every employer, except public entities, must insure its potential workers' compensation liability with an authorized insurance company, *N.J.S.A.* 34:15–78, unless the employer complies with the stringent self-insurance requirements prescribed by *N.J.S.A.* 34:15–77. Proof of compliance with the obligation to maintain workers' compensation insurance shall be filed by employers on demand of the Commissioner of Insurance, *N.J.S.A.* 34:15–73. An employer that fails to obtain insurance or to comply with the self-insurance requirement com-

mits a crime of the fourth degree and, if a corporation, its president, secretary and treasurer are liable personally for the benefits not safeguarded by insurance. *N.J.S.A.* 34:15–79. A non-complying employer is also subject to fines of $1000 for each ten-day period of non-compliance. *Ibid.* Moreover, employers that obtain insurance coverage remain liable to their injured workers until the required benefits have been paid. *N.J.S.A.* 34:15–82. Accordingly, the statutory scheme is designed to guarantee that workers receive compensation for their work-related injuries by imposing on employers the non-delegable obligation to maintain insurance coverage or to comply with the statute's strict self-insurance standards.

Reflecting that statutory mandate, the New Jersey Workers' Compensation Plan, compiled by the Compensation Rating and Inspection Bureau pursuant to *N.J.S.A.* 34:15–89, sets forth procedures designed to secure the timely renewal of workers' compensation insurance policies. The Plan provides:

> It shall be the obligation of the insurance company to arrange to afford renewal insurance for each employer insured by it in accordance with the provisions of this Plan. Approximately thirty days prior to the renewal date, the insurance company shall arrange for the particulars incident to the renewal of the insurance and provided the deposit premium is paid by the employer prior to the renewal date, the renewal insurance shall be issued without lapse.
>
> In the event that the deposit premium is not paid prior to the renewal date, the insurance company is authorized to defer the effective date of the renewal insurance until 12:01 A.M. on the day following receipt of payment.
>
> If insurance is not effected within sixty days of expiration the insurance company shall notify the Rating Bureau and furnish complete particulars of its efforts to effect insurance. The Rating Bureau shall inform the employer and designate producer, if any, and in the absence of premium payment leading to the issuance of insurance shall relieve the insurance company of any further responsibility.
>
> [*New Jersey Workers' Compensation & Employers' Liability Insurance Manual,* Part Three, § 14, ¶ 11.]

Thus, under the regulatory scheme the carrier must provide timely notice of the pending policy expiration and of the required renewal deposit premium. If the deposit premium is paid on time, the renewal policy must be issued without lapse. If the deposit premium is late but is paid within sixty days of the prior policy's

expiration, the renewal policy must be issued not later than 12:01 a.m. on the day after payment is received.

Our case law concerning renewal of liability and casualty insurance, as well as workers' compensation insurance, acknowledges the significant responsibility imposed on insurers to afford timely notice of a policy's expiration and of the prerequisites to renewal:

> On the other hand, procedures concerning renewal offers and nonrenewal notices recognize the fact that insurance policies afford coverage only for a specified period of time and that coverage will cease unless the policy is renewed. In order to prevent "lapses in coverage" resulting from "oversight by the insured" statutory and regulatory provisions exist requiring insurance companies to notify the insured that the policy period is about to end but that coverage will continue if the premium is paid by a certain date (a renewal offer), or that the policy period is about to end and the insured does not intend to renew the policy (a notice of nonrenewal).
>
> [*Lopez v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 239 *N.J.Super.* 13, 19–20, 570 *A*.2d 994 (App.Div.1990).]

*See also Meric Trucking & Leasing Co. v. Philip Lehman Co.*, 247 *N.J.Super.* 261, 265, 588 *A*.2d 1285 (App.Div.1991) (holding eighty-nine day notice of non-renewal of workers' compensation policy complies with Workers' Compensation Insurance Plan's requirement of not less than thirty days notice); *Barbara Corp. v. Bob Maneely Ins. Agency*, 197 *N.J.Super.* 339, 345, 484 *A*.2d 1292 (App.Div.1984) (holding that insurance companies are obligated to notify insureds concerning expiration of fire insurance policies and concluding that statutory notice requirement was "designed to minimize lapses in coverage regardless of whether the cancellation or nonrenewal was caused by underwriting factors or oversight by the insured").

Consistent with the provisions of the New Jersey Workers' Compensation Plan, our case law recognizes that an insurer that provides timely notice of renewal is not obligated to renew the policy if the renewal premium is not paid. *See Cervone v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 239 *N.J.Super.* 25, 27, 570 *A*.2d 999 (App.Div.1990); *Lopez, supra*, 239 *N.J.Super.* at 19–20, 22, 570 *A*.2d 994; *Insinga v. Hegedus*, 231 *N.J.Super.* 562, 566–67, 555 *A*.2d 1183 (App.Div.1989); *cf. Bright v. T & W Suffolk, Inc.*, 268 *N.J.Super.* 220, 224–27, 633 *A*.2d 116 (App.Div.1993)

(holding that insured's failure to make timely payment of renewal deposit premium on workers' compensation policy did not preclude coverage of post-expiration claim where insurer failed to provide insured with statutory notice of cancellation and failed to demonstrate use of "best efforts to effect insurance").

### III

■ Our review of this sparse record persuades us that the Appellate Division erred in concluding that Re–Insurance failed to comply with the Plan's requirement concerning renewals of workers' compensation policies. That conclusion was based primarily on Re–Insurance's renewal quotation requiring payment of the renewal deposit premium on or before November 28, 1987, five days earlier than the policy expiration date. Because Re–Insurance did not provide Baldino with a "reminder" during the five days between November 28 and December 3, 1987, the Appellate Division determined that the acceleration of the renewal premium due date constituted an attempt by the carrier to "shed the risk."

In our view, the establishment of a due date in the renewal quotation that precedes the policy expiration date by five days undoubtedly constituted a benign effort by the carrier to provide its insured with a protective cushion in order to avoid an inadvertent non-renewal, and not a calculated attempt by the insurer to avoid renewing the policy. The Plan does not prohibit insurers' use of a slightly accelerated renewal premium payment date. It merely requires that carriers "approximately thirty days prior to the renewal date . . . arrange for the particulars incident to the renewal of the insurance," and also mandates that the renewal policy issue without lapse if the renewal premium is paid prior to the policy expiration date. *New Jersey Workers' Compensation & Employers' Liability Insurance Manual,* Part Three, § 14, ¶ 11. Nothing in this record remotely suggests that Baldino's policy would not have been renewed if the deposit premium had been paid after November 28 but on or before December 3, 1987. As noted, when Re–Insurance eventually received the renewal deposit

premium on December 9, 1987, it reinstated the policy as of 12:01 a.m. on that day although the Plan permitted Re–Insurance to reinstate the policy on the following day. *Supra* at 578, 667 *A.*2d at 350. Moreover, we find no basis in this record for the Appellate Division's observation that Re–Insurance violated the Plan by failing to use its "best efforts to effect insurance." To the contrary, the carrier provided its insured with a timely renewal quotation, notified the insured immediately when the policy expired because the renewal deposit premium had not been received, and reinstated the policy immediately on receipt of the renewal deposit premium.

■ We acknowledge the strong public policy favoring uninterrupted workers' compensation coverage for all employers as well as the principle that insurance companies must comply strictly with all statutory and regulatory requirements relating to cancellation or non-renewal of such policies. See *Miller v. Reis,* 189 *N.J.Super.* 437, 444, 460 *A.*2d 210 (App.Div.1983). We are persuaded, however, that this record reveals no failure by Re–Insurance to comply fully with the statutory and regulatory mandates concerning renewal of workers' compensation policies.

## IV

We reverse the judgment of the Appellate Division and remand the matter to the Division of Workers' Compensation for further proceedings consistent with this opinion. The Division shall afford Baldino the opportunity to prove at an evidentiary hearing that payment of the renewal deposit premium was made prior to the date of Romanny's injury and that pursuant to the Plan Re–Insurance was required to issue its renewal policy on or before December 7, 1987. Absent such proof, the Division shall enter judgment dismissing the claim against Re–Insurance.

*For reversal and remandment*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—none.