678 A.2d 1051

JOSE R. MUNOZ, PLAINTIFF–RESPONDENT, v. NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION, DEFENDANT–APPELLANT, AND STANLEY AGENCY, INC., JOHN QUINN AND JOHN DOE, JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE, DEFENDANTS.

JAMES ZIMMERMAN, PLAINTIFF–RESPONDENT, v. THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION (N.J.A.F.I.U.A.), DEFENDANT–APPELLANT, AND JOHN DOES 1–10 (FICTITIOUS NAMES), DEFENDANTS.

PATRICIA NAPOLITANO, PLAINTIFF–RESPONDENT, v. ALLSTATE INSURANCE COMPANY, DEFENDANT–APPELLANT.

Argued February 27, 1996—Decided July 15, 1996.

*Dennis F. Carey*, III, argued the cause for appellant New Jersey Automobile Full Insurance Underwriting Association in Munoz v. New Jersey Automobile Full Insurance Underwriting Association (*Dwyer, Connell & Lisbona*, attorneys).

*Francis X. Ryan* argued the cause for appellants New Jersey Automobile Full Insurance Underwriting Association, (N.J.A.F.I.U.A.) and Allstate Insurance Company (*Green, Lundgren & Ryan*, attorneys; *Mr. Ryan* and *Laurence T. Bennett*, on the briefs).

*Lawrence A. Leven* argued the cause for respondent Jose R. Munoz (*Levin & Rios*, attorneys).

*Bruce D. Zeidman* argued the cause for respondent James Zimmerman (*Cofsky & Zeidman*, attorneys).

*James M. Nardelli* argued the cause for respondent Patricia Napolitano (*Parsons Cappiello & Nardelli*, attorneys).

*Bruce I. Goldstein* submitted a brief on behalf of amicus curiae, National Association of Independent Insurers in Munoz v. New Jersey Automobile Full Insurance Underwriting Association and Napolitano v. Allstate Insurance Company (*Saiber Schlesinger Satz & Goldstein*, attorneys; *Michael J. Geraghty*, on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

The question common to these three appeals is whether a notice of cancellation of automobile insurance coverage due to the policyholder's failure to pay premiums must post-date the premium due date, thereby allowing the policyholder a fifteen-day grace period before coverage expires. Plaintiffs failed to make payment and were consequently denied coverage by their respective carriers for accidents occurring after the putative cancellation dates.

The trial court found there was coverage for the accidents in two of the three cases. The Appellate Division held that all three plaintiffs were entitled to coverage under their policies. It reasoned that a notice of cancellation for failure to pay premiums is premature and hence invalid when it is issued before the point in time at which the payments become delinquent.

We granted certification, 142 *N.J.* 573, 667 *A.*2d 191 (1995), and now reverse. We hold that the plain language of the applicable statute and regulations do not require that notice of cancellation post-date the default in payment.

I

Plaintiff, Jose Munoz, purchased a one-year policy from defendant New Jersey Automobile Full Insurance Underwriting Association (JUA) effective from May 18, 1990, to May 19, 1991. The total annual premium was $1,234. Munoz paid $400 at the inception of the policy, leaving a balance of $834. He made no further payments. On September 14, 1990, Computer Sciences Corporation, the policy servicer, mailed Munoz a cancellation notice informing him that his policy would expire on October 3, 1990, if payment was not received by that date. No payment was received. On October 17, 1990, Munoz was involved in an automobile collision resulting in personal injuries and damage to his vehicle. Munoz made a claim for coverage, which was denied on grounds that his policy had been canceled.

Plaintiff, James Zimmerman, purchased a one-year policy from the JUA effective from September 24, 1990, to September 24, 1991. The annual premium was $1,466, payable in installments. Zimmerman made the initial payment of $445. According to Rule 16(a) of the JUA manual of Rules and Rates, the next premium was due sixty days from the effective date of the policy, November 23, 1990. Zimmerman contends that he was unaware of that due date. The record reveals no notice regarding payment of an installment until December 5, 1990, when Electronic Data Systems Corporation, the policy servicer, mailed a notice of cancellation stating that the policy would expire on December 22, 1990, if payment was not received by that date. The perforated invoice portion of the notice showed an "Invoice Date" of December 2, 1990, and a "Due Date" of December 22, 1990. Zimmerman claims he did not receive that notice; he made no further payment. On March 26, 1991, Zimmerman was involved in an automobile accident and sought personal injury benefits. Defendant JUA denied the claim, stating that the policy had been canceled.

The facts concerning the third plaintiff, Patricia Napolitano, are more complicated. Napolitano was insured through defendant Allstate Insurance Company (Allstate). In September 1991, she

received a notice from Allstate instructing her to renew her existing policy, which was due to expire September 23, 1991. Napolitano promptly renewed and requested a change in the policy that increased her premium. The adjusted premium for the new policy totalled $456.10 for coverage running from September 23, 1991, to March 23, 1992. Payment was to be made in four equal installments over that six-month period.

According to Napolitano, two weeks after the effective date of the policy she received two bills in close succession, the first one for approximately $230 and the second in the amount of $116.53. Because the combined total of the bills constituted nearly the entire premium for the six months, Napolitano assumed the $230 bill was either in error or merely advisory and therefore paid only the $116.53 bill. That check was dated October 15, 1991.

According to Allstate, it mailed Napolitano a renewal bill on September 24, 1991, in the amount of $116.53. That amount reflected the next six-month premium divided by four, $114.02, plus a $2.50 installment payment plan fee. On October 3, 1991, not having received payment, Allstate sent a cancellation notice to Napolitano stating that her policy would be canceled October 22, 1991, if the $116.53 payment was not received by that date. On October 7, 1991, Allstate mailed two bills: The first was a bill for $230.55, reflecting both the first $116.53 payment, which had not yet been received, and the *next* premium payment of $114.02. The second bill was a reprint of the outstanding September 24 bill. On October 20, 1991, Allstate received Napolitano's October 15 payment of $116.53. On October 30, 1991, Allstate mailed a notice of cancellation indicating that Napolitano's policy would expire as of November 18, 1991, if payment of $116.52 was not made by that time. That amount reflected the $114.02 outstanding from the $230.55 invoice, after subtracting the $116.53 payment received on October 20, plus a second $2.50 installment payment fee. The notice instructed the insured to disregard the notice if payment had already been made, which Napolitano did, believing that her October 15 payment satisfied the outstanding amount. Napolitano

never contacted Allstate or her insurance agent with respect to the notices.

Copies of the bills were not produced at trial, and the parties are unable to provide the due dates of the premium payments. A representative of Allstate indicated, however, that the payments were probably due twenty-eight days from the date of the bills. On December 21, 1991, Napolitano was injured in an automobile accident and her subsequent claim for personal injury benefits was denied by Allstate on grounds that the policy had been canceled.

· All three plaintiffs instituted proceedings in the Law Division to obtain coverage under their canceled policies. In the *Munoz* case, the trial court concluded, based on *Christian v. Ormsby*, 267 *N.J.Super.* 237, 266–67, 631 *A.*2d 158 (Law Div.1992), that the applicable statutory provisions, read together, require that the fifteen-day notice of cancellation for failure to pay premiums be issued after the date of default in payment in order to provide a window of opportunity for the insured to pay the amount past due. *Munoz v. Quinn*, 284 *N.J.Super.* 61, 63, 663 *A.*2d 139 (Law Div.1994). It therefore ordered reinstatement of the policy. The Appellate Division affirmed in a published opinion, holding that requiring the notice of cancellation to post-date the premium due date would not result in a windfall of fifteen days of free coverage to the insured because the insurer is free to fix the premium due date at fifteen days before coverage is due to expire. *Munoz v. New Jersey Auto. Full Ins. Underwriting Ass'n*, 284 *N.J.Super.* 1, 3, 663 *A.*2d 108 (App.Div.1995).

In the *Zimmerman* case, the issue of premature notice was not raised in the trial court. Zimmerman brought an action against the JUA, asserting that he had not received the cancellation notice of December 2, 1990. The trial court rejected Zimmerman's claim, finding that the JUA had sufficiently demonstrated proper mailing of the cancellation notice. On appeal, Zimmerman raised the issue of premature notice as plain error. The Appellate Division revered in an unpublished opinion, finding there was

coverage notwithstanding proper mailing. It relied on the prior decisions in *Munoz* and *Christian.*

In the *Napolitano* case, plaintiff argued that cancellation was improper because the notice was prematurely sent and because she reasonably relied on the language of the notice instructing her to disregard same if payment had been made. At the close of plaintiff's evidence, the trial court directed a verdict in favor of the insurer, concluding that it was not bound by the Law Division opinions in *Munoz* and *Christian. Munoz* had not been decided by the Appellate Division at that time. The trial court found it unlikely that the Legislature intended to extend coverage past an insured's default in payment simply because the required cancellation notice was mailed early. The court rejected plaintiff's reasonable expectations argument. In an unpublished opinion, the Appellate Division reversed on the premature notice issue, citing the *Munoz* and *Christian* decisions. Plaintiff did not file a cross-petition for certification on the issue of her reasonable expectations, and thus we need address only the issue of premature notice.

## II

In the present appeals, the insurance companies assert that the decisions of the Appellate Division contradict the plain meaning of the notice of cancellation statute. They argue that the statute nowhere states that a cancellation notice must post-date default in payment and that such a requirement obligates the insurance companies to provide a grace period not intended by the Legislature. The insureds rely on the Appellate Division decisions and the reasoning in *Christian* and assert that the applicable statutes and regulations, read collectively, require that a cancellation notice post-date the default in payment.

### –A–

The issue with which we are presented is one of first impression for this Court. Because its resolution requires us to interpret

legislation, we begin with a close examination of the relevant statutory language. *Chase Manhattan Bank v. Josephson,* 135 *N.J.* 209, 225, 638 *A.*2d 1301 (1994); *Brenner v. Berkowitz,* 134 *N.J.* 488, 504, 634 *A.*2d 1019 (1993); *Lammers v. Board of Educ.,* 134 *N.J.* 264, 267, 633 *A.*2d 526 (1993).

Cancellation of automobile insurance is governed by *N.J.S.A.* 17:29C–6 to –13. Section 7 concerns grounds for cancellation and provides:

> (A) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
>
> (a) Nonpayment of premium....
>
> [<em>N.J.S.A.</em> 17:29C–7.]

"Nonpayment of premium" is defined as "failure of the named insured to discharge *when due* any of his [or her] obligations in connection with the payment of premiums on a policy, or any installment of such premium...." *N.J.S.A.* 17:29C–6(F) (emphasis added).

Section 8, the specific provision at issue in these appeals, addresses the proper timing of notice of cancellation and provides:

> No notice of cancellation of a policy ... shall be effective unless mailed or delivered by the insurer to the insured at least 20 days prior to the effective date of cancellation; *provided, however, that where cancellation is for nonpayment of premium at least 15 days' notice of cancellation accompanied by the reason therefor shall be given.*
>
> [<em>N.J.S.A.</em> 17:29C–8 (emphasis added).]

Plaintiffs urge us to read this section, in conjunction with the definition of nonpayment and the statutory grounds for issuing notice of cancellation, as requiring that a notice of cancellation for nonpayment of premium be mailed *after* the premium due date.

It is well settled that statutes should be interpreted in accordance with their plain meaning. *Fisch v. Bellshot,* 135 *N.J.* 374, 383, 640 *A.*2d 801 (1994); *Phillips v. Curiale,* 128 *N.J.* 608, 617–18, 608 *A.*2d 895 (1992); *State Dep't of Law & Pub. Safety v. Bigham,* 119 *N.J.* 646, 651, 575 *A.*2d 868 (1990). Where a statute is clear and unambiguous, a court may not impose an interpretation other than the statute's ordinary meaning. *Ocean Pines, Ltd.*

*v. Borough of Point Pleasant,* 112 *N.J.* 1, 7, 547 *A.*2d 691 (1988); *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982); *In re Jamesburg High School,* 83 *N.J.* 540, 547, 416 *A.*2d 896 (1980).

It is apparent that the cited provisions concerning cancellation for nonpayment of premium do not by their terms require that notice post-date the payment due date. In order for notice of cancellation for nonpayment of premium to be effective, it need only state the reason for the cancellation and be mailed or delivered at least fifteen days prior to the date of cancellation. Although the definition provision indicates that the nonpayment does not occur until the policyholder fails to pay the premium "when due," *N.J.S.A.* 17:29C–6(F), nothing in the statutes can be read as precluding insurers from mailing notice in advance of that date.

Nor do the applicable administrative regulations concerning cancellation for nonpayment of premium so provide. Section 11:3–7.6 of the automobile insurance regulations provides two additional timing requirements with respect to mailing notice of cancellation:

(b) The effective date of the cancellation of a policy for nonpayment of premium shall not be earlier than 10 days prior to the last full day of which premium received by the company prior to the date of preparation of the cancellation notice, would pay for coverage on a pro rata basis. . . .

. . . .

(d) No cancellation notice shall be mailed prior to 30 days in advance of its effective date.

*[N.J.A.C.* 11:3–7.6.]

Again, there is an absence of any requirement that the cancellation notice post-date the default in payment.

This is not a situation in which the Court is called on to interpret an ambiguous word or phrase. *Cf. State v. Valentin,* 105 *N.J.* 14, 19–20, 519 *A.*2d 322 (1987) (finding that word "volunteer," with respect to offense of volunteering false information to police officer, was subject to more than one interpretation); *Lukas v. State Dep't of Human Servs.,* 103 *N.J.* 126, 131, 510 *A.*2d 1123 (1986) (observing that portion of State Facilities Education Act relating to acquisition of teachers' rights could admit alternative

interpretations when read in isolation). There is simply no provision, either in the statute or regulations, that on its face imposes the requirement that notice post-date default. With respect to timing, the plain language of the statute and regulations requires only that notice of cancellation for nonpayment of premium be mailed or delivered at least fifteen days, and not more than thirty days, in advance of the effective date of cancellation, which must be no more than ten days prior to the last day for which coverage has been paid by the prior premium. As such, the language admits the conclusion that notice may be mailed prior to default in payment, as long as those conditions are met.

–B–

Plaintiffs assert, however, that legislative intent supports the interpretation that notice must be mailed after default. While a court may not veer from the plain meaning of a statute that is clear and unambiguous, such meaning is to be given effect "absent any specific indication of legislative intent to the contrary." *Town of Morristown v. Woman's Club,* 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991); *accord Chase Manhattan Bank v. Josephson, supra,* 135 *N.J.* at 225, 638 *A.*2d 1301; *Merin v. Maglaki,* 126 *N.J.* 430, 434, 599 *A.*2d 1256 (1992). Where the Legislature did not consider a specific situation, a court should determine the Legislature's probable intent as if it had addressed the issue. *Amerada Hess Corp. v. Director, Div. of Taxation,* 107 *N.J.* 307, 318–19, 526 *A.*2d 1029 (1987), *aff'd,* 490 *U.S.* 66, 109 *S.Ct.* 1617, 104 *L.Ed.*2d 58 (1989); *In re Mutual Benefit Life Ins. Co.,* 258 *N.J.Super.* 356, 375, 609 *A.*2d 768 (App.Div.1992).

In *Christian v. Ormsby, supra,* 267 *N.J.Super.* at 266, 631 *A.*2d 158, the only published decision on this issue prior to the Appellate Division's consideration of the cases currently before us, the Law Division determined that the statutory provisions, read together, evince a legislative intent to "provide policyholders with a fifteen-day grace period after default in the payment of a premium under an automobile insurance policy before the insurer can

effectively cancel the policy." *Ibid.* In so finding, the Law Division relied on the statutes themselves and cited no legislative history supporting its conclusion.

We are unconvinced that the language of the statutes conveys any intent other than the obvious: to ensure that each policyholder receive fifteen days of notice before his or her policy is canceled and to require the insurance company to identify the reason for cancellation. No legislative committee statement accompanied the enactment of the 1968 notice provision. We observe, however, that the 1967 Senate Committee hearing on motor vehicle insurance, which addressed a range of insurance problems, suggests the Legislature's concern that insurance companies were canceling policies capriciously and not providing policyholders with sufficient time to find alternative coverage. *Public Hearing on Motor Vehicle Liability Insurance Before the Senate Comm. on Banking and Insurance,* 91–95 (Aug. 15, 1967); *see also Romanny v. Stanley Baldino Constr. Co.,* 142 *N.J.* 576, 582, 667 *A.*2d 349 (1995) (indicating that minimum notice periods exist to prevent lapses in coverage) (relying on *Lopez v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 239 *N.J.Super.* 13, 19–20, 570 *A.*2d 994 (App.Div.), *certif. denied,* 122 *N.J.* 131, 584 *A.*2d 206 (1990)); *Barbara Corp. v. Bob Maneely Ins. Agency,* 197 *N.J.Super.* 339, 344, 484 *A.*2d 1292 (App.Div.1984) (same). Nothing in that hearing or in relevant press articles from that period suggests that the Legislature intended to provide the type of grace period urged by plaintiffs.

On the contrary, in 1980, the Legislature amended *N.J.S.A.* 17:29C–8 and –10 in response to this Court's decision in *Weathers v. Hartford Ins. Group,* 77 *N.J.* 228, 390 *A.*2d 548 (1978), which concerned the sufficiency of proof for demonstrating proper mailing of a notice of cancellation. *Id.* at 232–33, 390 *A.*2d 548. The amendments set forth particular proof of mailing requirements and changed the minimum period of notice of cancellation for nonpayment of premium from ten days to the current fifteen days. The amendment as introduced also included language that would

have amended *N.J.S.A.* 17:29C–7 to include a five-day grace period similar to that sought by plaintiffs. The amended section would have provided:

(A) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:

(a) Nonpayment of premium; *provided that a notice of cancellation for nonpayment of premium shall not be effective if payment of the amount due is received by the insurer within 5 business days of the effective date of such notice* [.]

[Assembly Bill No. 1418 (Apr. 14, 1980) (second reprint) (emphasis added).]

That language was deleted by the Assembly Committee prior to the amendment's adoption.

Although the reason for the Legislature's failure to adopt that provision is unknown, it is clear that the Legislature at one point considered enacting a grace period but determined not to do so. Thus, plaintiffs urge us to adopt an interpretation of a statute that was expressly rejected by the Legislature. *Cf. Amerada Hess Corp. v. Director, Div. of Taxation, supra,* 107 *N.J.* at 312–13, 526 *A.*2d 1029 (applying doctrine of probable intent to determine whether statute preventing corporations from excluding certain federal taxes from the state corporate tax base applied to a particular tax not in existence at time of the statute's enactment).

Moreover, any deviation from the plain meaning of a statute is permitted only where there is " 'specific' " legislative intent requiring an alternative reading. *Chase Manhattan Bank v. Josephson, supra,* 135 *N.J.* at 225, 638 *A.*2d 1301 (quoting *Town of Morristown v. Woman's Club, supra,* 124 *N.J.* at 610, 592 *A.*2d 216) (emphasis omitted); *see also N.J.S.A.* 1:1–1 (declaring that statutes should be given their generally accepted meaning "unless inconsistent with the *manifest* intent of the legislature") (emphasis added). None of the available indications of legislative intent suggests a "specific" intent to create a grace period. *Compare Township of Holmdel v. Director, Div. of Taxation,* 130 *N.J.* 522, 528–29, 617 *A.*2d 656 (1992) (Stein, J., concurring) (doubting that Legislature intended or considered that statute requiring State to compensate municipalities for loss of tax revenue formerly paid by local insurance companies in the event that company leaves munic-

ipality would require such payments where company relocates to different state, but finding insufficient legislative history to overcome plain meaning allowing that result) *with Young v. Schering Corp.*, 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995) (using probable intent to overcome literal meaning of Conscientious Employee Protection Act (CEPA) provision that stated that institution of CEPA action waives all common law rights where Court was *"thoroughly convinced* [that] the Legislature did not intend to penalize former employees by forcing them to choose between a CEPA claim and other legitimate claims") (emphasis added).

We therefore reject the lower courts' reasoning in *Munoz* and *Christian.* We discern no cognizable legislative intent to create a grace period *after* the effective date of cancellation from either the statute's history or the language itself. In the absence of such intent, it is the plain meaning of the statute that governs. We are persuaded that the language of the statute does not provide for a grace period. It is not the role of a court to supply what the Legislature has omitted, and we decline to do so here. *Witt v. Gloucester County Bd. of Chosen Freeholders*, 94 *N.J.* 422, 434, 466 *A.*2d 574 (1983) (citing *Craster v. Board of Comm'rs*, 9 *N.J.* 225, 230, 87 *A.*2d 721 (1952)); *Remedial Educ. & Diagnostic Servs., Inc. v. Essex County Educ. Servs. Comm'n*, 191 *N.J.Super.* 524, 528, 468 *A.*2d 253 (App.Div.1983), *certif. denied*, 97 *N.J.* 601, 483 *A.*2d 139 (1984).

### III

Defendants assert that requiring the notice of cancellation to post-date the default in payment will effectively provide delinquent policyholders with fifteen days of free insurance following default. Plaintiffs insist that no windfall will result as insurers are free to set the premium due date in advance of the insured's "carry date," that is, the last full day of coverage paid for under the previous premium payment. Defendants resist this solution, arguing that the carry date commonly fluctuates due to changes made in coverage during the course of a policy and that they are

constrained by *N.J.A.C.* 11:3–7.6(b), which prevents insurers from canceling a policy more than ten days prior to the carry date.

We agree with plaintiffs and the Appellate Division that the problem of free insurance where a notice post-dates default can be minimized by proper scheduling on the part of insurance companies. If a policyholder's initial premium payment, pro rated on a per diem basis, provides coverage through May 30, for instance, an insurer can choose to set the second premium due date at May 15. In such a situation, the policyholder has already paid for the fifteen days that comprise the statutory notice period in the event that he or she defaults. If during the course of the policy the insured's carry date moves forward to May 15 due to a change in coverage, we see no reason why the insurer cannot at that point adjust the premium due date to May 1 or require an additional premium payment at the time of the change in coverage that will carry the policyholder to the same date as under the previous policy. The proposed solution remedies the free insurance problem. Indeed, we were informed at oral argument that the insurance industry has taken corrective action to adopt procedures such as those urged by plaintiffs. We recommend nonetheless that the Commissioner of Insurance consider adopting regulations that would require all insurance companies to do so.

While this issue is of obvious significance to insurance companies and to the plaintiffs, it contributes little to plaintiffs' statutory argument. The relevant inquiry in these matters is whether the Legislature intended to provide a grace period in which defaulting policyholders can satisfy their overdue payment obligations and avoid cancellation. The interpretation advanced by plaintiffs allows an insured to reinstate coverage without penalty after the date on which the policy could properly be canceled for nonpayment of premium. As noted before, nothing in the applicable statutory provisions supports that result. Consequently, the insurers' ability to avoid free coverage during that period does not inform our resolution of these appeals.

## IV

In addition to the argument that notice of cancellation was prematurely sent, plaintiff Zimmerman asserts that in his case the JUA terminated coverage more than ten days before the carry date in contravention of applicable regulations. That argument was not raised in the lower court proceedings.

As previously noted, *N.J.A.C.* 11:3–7.6(b) provides that the effective date of cancellation of a policy for nonpayment of premium may not be earlier than ten days prior to the last full day of coverage under the last premium payment received. Zimmerman contends that the premium installment he paid at the inception of his policy, calculated on a per diem basis, would have provided coverage through January 11, 1991. The notice of cancellation provided by the JUA indicated an effective date of December 22, 1990.

█ Where a notice of cancellation does not comport with the appropriate timing and mailing requirements, it is deemed ineffective. *N.J.S.A.* 17:29C–7, –8, –10; *Lopez v. New Jersey Auto. Full Ins. Underwriting Ass'n, supra,* 239 *N.J.Super.* at 20, 570 *A.*2d 994; *see also Romanny v. Stanley Baldino Constr. Co., supra,* 142 *N.J.* at 584, 667 *A.*2d 349 (noting that "insurance companies must comply strictly with all statutory and regulatory requirements relating to cancellation"). Thus, Zimmerman may have an alternative basis for seeking reinstatement despite our conclusion that the notice was not premature for failure to post-date the default in payment. A remand is required for a determination of that issue.

## V

In sum, we hold that the plain language of the applicable statutory and regulatory provisions permits insurers to send the requisite notice of cancellation in advance of the premium due date. There is no indication of contrary legislative intent that persuades us otherwise. We therefore reverse the judgment of

the Appellate Division in all three cases. We remand the Zimmerman case to the Law Division for further proceedings in accordance with this opinion.

STEIN, J., dissenting.

The Court holds that the statute requiring fifteen days notice to an insured prior to the cancellation of an automobile insurance policy for non-payment of the premium and requiring that the reason for cancellation accompany the notice, *N.J.S.A.* 17:29C–8, permits the notice to be given before the default in payment has taken place. In my view, that holding cannot be reconciled with the plain language of *N.J.S.A.* 17:29C–8 and the related statute, *N.J.S.A.* 17:29C–7(A) (listing grounds on which effective notice of cancellation may be based), nor with the obvious legislative intent underlying those two provisions. I would affirm the holding of the Appellate Division in *Munoz v. New Jersey Automobile Full Insurance Underwriting Ass'n* (JUA) and *Napolitano v. Allstate Insurance Co.* I would modify the Appellate Division's order in *Zimmerman v. JUA* to provide for a new trial on remand to permit the insurer to produce evidence of its premium due date.

*N.J.S.A.* 17:29C–7(A) provides that a notice of cancellation "shall be effective only if it is based on one ... of the following reasons": (a) non-payment of the policy premium, or (b) revocation or suspension of the insured's driver's license, vehicle registration, or the license of an operator of the insured vehicle. Under the ordinary meaning of that statutory language, a notice of cancellation cannot be "based on" non-payment or loss of a driver's license until one of those two events has occurred. Until either the insured defaults on the obligation to pay the premium when due or suffers the loss of driving privileges, the factual basis for the cancellation does not exist and a notice of cancellation will not be effective under the terms of the statute.

Moreover, an effective notice of cancellation based on non-payment of premium must give the reason for the cancellation. *N.J.S.A.* 17:29C–8. The notice cannot reasonably (or accurately)

give non-payment as the reason for cancellation until non-payment has occurred. Indeed, a premature notice of cancellation for non-payment would not serve its intended function of informing an insured that his or her coverage was in danger of lapsing when the insured had no intention of defaulting, but, because of a bounced check or some other unexpected, post-notice event, fails to pay on time. Moreover, according to *N.J.S.A.* 17:29C–6(F), non-payment of the premium occurs when the insured fails to discharge his obligation to pay the premium "when due." Obviously, a notice of cancellation based on non-payment that is sent before the payment is due cannot be effective under the plain terms of the statute.

The Court holds, however, that the statute permits a notice of cancellation to be sent before the grounds for the cancellation have arisen. The Court's reasoning suggests that an effective cancellation notice may be "based on" the mere possibility that in the future the premium would not be paid or that a driver's license would be revoked or suspended. I do not believe that result can be reconciled with the plain meaning of the statute.

*N.J.S.A.* 17:29C–8 requires that a notice of cancellation for non-payment must be sent fifteen days before the effective date of the cancellation. Therefore, because an effective notice of cancellation cannot be sent until the event on which the cancellation is based has occurred, the effective cancellation date for non-payment cannot be sooner than fifteen days from non-payment, which, by definition, cannot occur until the premium due date and the insured's failure to pay. Thus, the fifteen-day grace period has been written into the statute by the Legislature in plain terms and no judicial construction is required to give it effect.

Only one conceivable purpose exists for the Legislature to have enacted that provision: to provide defaulting policyholders with a short grace period in which to make payment and preserve their coverage. *See Christian v. Ormsby,* 267 *N.J.Super.* 237, 266, 631 *A.*2d 158 (Law Div. 1992). That purpose is consistent with the fundamental public policy in favor of universal automobile insurance. *See Lindstrom v. Hanover Ins. Co.,* 138 *N.J.* 242, 247–48,

649 *A*.2d 1272 (1994). The Court, by permitting an effective notice of cancellation for non-payment of the premium to be sent before the premium is due, renders that grace period a nullity, because sending a premature notice will permit the insurer to cancel the policy immediately if payment is not received on the due date. *See, e.g., Christian, supra,* 267 *N.J.Super.* at 265, 631 *A*.2d 158.

No inquiry into the legislative intent is necessary because the statute is clear on its face. If there were any ambiguity, public policy and the obvious intent of the Legislature would mandate that the statute be construed to allow defaulting policyholders a brief opportunity to prevent a lapse in coverage. The Court concedes that such a construction would not inconvenience insurers beyond requiring them to set the premium due date fifteen days in advance of the date the policy would lapse if the premium were not paid. *Ante* at 390, 678 *A*.2d at 1057. The Court's reading of the statute, in addition to contradicting its plain meaning, thwarts both the public policy in favor of preserving coverage and the unmistakable legislative intent in enacting the statute.

Accordingly, I would affirm the Appellate Division in both *Munoz* and *Napolitano.* In *Zimmerman v. JUA,* the Appellate Division held that the only evidence indicated that December 22, 1990, constituted the premium due date, rendering ineffective the notice of cancellation of December 5. The insurer argued, however, that the rules of the JUA, which were appended to the policy application, were part of the policy and provided for premium due dates of 60, 120, and 180 days from the date of the inception of the policy on September 24, 1990. Obviously the JUA rules constitute evidence of an earlier premium due date than either December 22 or December 5 and would support a finding that the notice of cancellation properly was sent after the insured defaulted. The Appellate Division reversed and remanded in *Zimmerman* for further proceedings consistent with its ruling that the notice of cancellation was premature. I would also remand, requiring a new trial to determine whether there was an earlier premium due

date in the policy that preceded the date of the notice of cancellation.

*For reversal*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—5 in Nos. A–115 and A–117.

*For affirmance*—Justice STEIN—1 in Nos. A–115 and A–117.

*For reversal and remandment*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and COLEMAN—5 in No. A–116.

*For modification and remandment*—Justice STEIN—1 in No. A–116.