712 A.2d 1258

ESTATE OF CARL DOLENTE AND ADELE DOLENTE, PLAINTIFFS–APPELLANTS, v. BOROUGH OF PINE HILL, DEFENDANT–RESPONDENT, AND PLANNING BOARD OF BOROUGH OF PINE HILL, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued May 28, 1998—Decided June 30, 1998.

Before Judges BAIME and WEFING.

*M. James Maley, Jr.* argued the cause for appellants (*Maley, Williamson, Hayden & Gmerek,* attorneys; *Mr. Maley* and *Paul C. Dougherty,* on the brief).

*Salvatore Perillo* argued the cause for respondent (*Perskie, Nehmad & Perillo,* attorneys; *Mr. Perillo* and *Richard F. DeLucry,* on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

Adele Dolente and the Estate of Carl Dolente (Dolentes) own a seventy-three acre tract in the Borough of Pine Hill, New Jersey. They appeal the trial court's order that granted Pine Hill's motion for summary judgment and dismissed their complaint in which they sought to challenge the borough's declaration that their property was in need of redevelopment and subsequent rezoning. We reverse and remand for further proceedings.

The Dolentes' challenge rested both upon the Local Redevelopment Housing Law (*N.J.S.A.* 40A:12A–1 to –49) (Redevelopment Act) and the Open Public Meetings Act (*N.J.S.A.* 10:4–6 to –21) (OPMA or Sunshine Law). A detailed chronology is required to understand the context in which the Dolentes' challenge arose. We have synthesized the facts from the public documents, certifications and admitted facts contained in the pleadings.

The Dolentes' seventy-three acre parcel is a vacant, wooded tract and in 1990, they applied for and obtained subdivision and site plan approval for residential development on the land. Those plans have not yet come to fruition.

The Dolentes' land is adjacent to another parcel containing one-hundred and eighty-three acres. This second parcel at one point contained a recreation area known as Action Mountain. Action Mountain ceased operations in the 1980's and Pine Hill obtained ownership of the land in 1995 through foreclosure *in rem.*

In August 1996, Pine Hill advertised for redevelopment studies and in September accepted redevelopment proposals for Action Mountain. These proposals envisioned construction of a golf course upon the combined Dolente and Action Mountain tracts.

When Pine Hill accepted the proposals there had been no formal municipal action under the Redevelopment Law.

In October 1996, the Pine Hill borough council passed a resolution which requested the Pine Hill planning board to undertake a study to determine if any areas within the municipality could be considered blighted within the criteria of the Redevelopment Act. A final draft of a redevelopment study, dated November 12, 1996, was submitted to the planning board at its December 3, 1996 meeting. Notice of this meeting was mailed to the Dolentes but no one appeared on their behalf. (Carl Dolente passed away in June 1996. His widow was not involved in active management of his estate and the practice was to forward such notifications to an attorney. The family did not receive it until after the meeting had taken place.)

On November 18, 1996, two weeks prior to the planning board meeting at which the redevelopment plan was to be considered, the municipal council passed on first reading an ordinance approving the redevelopment plan. The ordinance refers to the redevelopment plan "as approved and recommended by the Borough of Pine Hill Planning Board" even though the planning board had, in fact, not yet met to consider the issue. This ordinance contained a notice that it would be considered for final passage on January 1, 1997.

At the December 3, 1996 meeting, the planning board passed a resolution approving the redevelopment area. The next regularly scheduled meeting of the borough council at which the redevelopment area could be considered in the regular course of business was Monday, December 16, 1996.

In compliance with *N.J.S.A.* 10:4–18, Pine Hill caused to be posted and published in January 1996 a schedule of "council meetings" and "caucus meetings." The notice provided that regular council meetings would be held on the third Monday of each month at 8:00 p.m. The notice provided, "FORMAL ACTION WILL BE TAKEN BEFORE THE PUBLIC AND THE GOVERNING BODY WILL CONSIDER ANY PERTINENT MAT-

TERS ESSENTIAL FOR THE PROPER CONDUCT OF BUSI-NESS." The notice further provided that caucus meetings would be held on the second Monday of each month at 8:00 p.m. and stated, "ALL CAUCUS MEETINGS WILL BECOME SPECIAL MEETINGS BY ORDER OF THE MAYOR IN THE EVENT THERE IS PERTINENT BUSINESS THAT MUST BE CONSIDERED BEFORE THE REGULAR COUNCIL MEETING."

The council met on Monday, December 9, 1996 at 8:00 p.m. at a regularly scheduled caucus meeting. At the conclusion of this caucus meeting, the Mayor called a special meeting at 10:00 p.m. At this special meeting, the council passed a resolution accepting the planning board's resolution approving the redevelopment area and approved on first reading an ordinance to rezone the affected property, which included the Dolentes' land. The special meeting adjourned at 10:03 p.m.

On December 27, 1996, the borough council met in a special meeting, notice of which had been provided on December 18, 1996. The attorney for the Dolentes appeared at this meeting to object to the inclusion of the Dolente land in any redevelopment area. Although the notification of the December 27, 1996 meeting mentioned nothing about the Dolente property, it did refer to a Redevelopment Agency. According to the attorney's certification, he inquired of the council whether "any action had been taken regarding the Dolente property and was advised that such action was scheduled for Second Reading and final adoption on January 1, 1997. At no time was I advised of the Borough Council's previous Special Meeting held on December 9, 1996 or the Planning Board's Meeting held on December 3, 1996." That statement is not contested.

On December 31, 1996, plaintiffs filed an application with the Pine Hill planning board for an extension of their subdivision and site plan approvals. *N.J.S.A.* 40:55D–52.

The borough council met on January 1, 1997. At that meeting it adopted the redevelopment plan for Pine Hill and also completed the rezoning of the affected property.

On February 14, 1997, plaintiffs filed a two-count complaint. The first count sought to remove their land from the redevelopment area and to set aside its rezoning. In the second count, plaintiffs sought to have the Superior Court, rather than the planning board, hear their application for an extension of their subdivision and site plan approvals on the basis that the planning board had a conflict of interest. Pine Hill filed its answer and a motion for summary judgment. In the course of preparing its opposition to this motion, plaintiffs learned, for the first time, of the occurrence of the December 9, 1996 special council meeting. They then amended their complaint to allege a violation of the Sunshine Law.

The summary judgment motion was argued before the trial court on June 6, 1997. The trial court issued a written opinion on August 29, 1997 in which it concluded that conducting the special meeting on December 9, 1996 did not violate the OPMA and that plaintiffs challenge was untimely under *N.J.S.A.* 10:4–15(a) and *R.* 4:69–6; it therefore entered an order on October 22, 1997 dismissing plaintiffs' complaint. Because we disagree with the trial court's conclusions in both regards, we reverse and remand for further proceedings.

I.

Under OPMA, there are three categories of meetings which a public body may hold. They are regular meetings, an annual schedule of which must provided in accordance with *N.J.S.A.* 10:4–18, meetings for which at least forty-eight hours advance notice must be provided in accordance with *N.J.S.A.* 10:4–8d, and meetings "required in order to deal with matters of such urgency and importance that a delay for the purpose of providing adequate notice would be likely to result in substantial harm to the public interest." *N.J.S.A.* 10:4–9b(1).

The trial court concluded that because Pine Hill's annual notice referred to the possibility that a caucus meeting could become a

special meeting, no further notice to the public was required. In reaching this conclusion, the trial court relied upon the last sentence of *N.J.S.A.* 10:4–8d which provides "[w]here annual notice or revisions thereof in compliance with section 13 of this act [*N.J.S.A.* 10:4–18] set forth the location of any meeting, no further notice shall be required for such meeting."

We interpret that limiting language to require no "further notice" of additions or changes to the agenda of meetings for which there has already been published notification. Thus, in *Witt v. Gloucester County Bd. of Chosen Freeholders,* 94 *N.J.* 422, 466 *A.*2d 574 (1983), the Supreme Court upheld a resolution expanding the membership of the Gloucester County Utilities Authority that was initially considered at a freeholder work session on December 1, 1981 and passed at a regularly scheduled freeholder meeting on December 2, 1981. Our decision in *Crifasi v. Governing Body of the Borough of Oakland,* 156 *N.J.Super.* 182, 383 *A.*2d 736 (App. Div.1978) is similar. In that case, we approved the appointment of a replacement member to the borough council at a regularly scheduled meeting even though that topic had not been included in the meeting's agenda.

Nothing within *Witt* or *Crifasi,* the two cases upon which defendant relies, supports a conclusion that a public body may meet and transact public business after a regularly scheduled private caucus session, with no further notice to the public, merely by inserting into its annual notice a statement that a caucus could become a special meeting by order of the mayor. We interpret that statement within the annual notice as merely a pragmatic recognition that a situation could develop which might require the council's attention prior to its next regularly scheduled meeting. The annual notice, merely by mentioning the possibility of a special meeting, could not, however, obviate the necessity of the council's compliance with the forty-eight hour advance notice required under *N.J.S.A.* 10:4–8d with respect to the special meeting, absent the existence of a matter of public urgency and importance under *N.J.S.A.* 10:4–9.

That is particularly so in light of the language the council selected for its annual notice, which refers to "pertinent business that must be considered before the regular council meeting." The record is absolutely silent on why the Pine Hill borough council had to consider the planning board's recommendation on December 9, 1996, as opposed to December 16, 1996. There is thus no basis to find that the Pine Hill borough council could have concluded on December 9, 1996 that the recommendation of the planning board was a matter "that must be considered before the regular council meeting."

## II.

We turn now to the question whether plaintiffs' complaint in this matter was timely filed. The trial court concluded that the accrual date was December 9, 1996 and that since plaintiffs' complaint was filed more than forty five days later, it was barred both under *N.J.S.A.* 10:4–15 and Rule 4:69–6. Again, we disagree.

*N.J.S.A.* 10:4–15 provides in pertinent part that a challenge under OPMA "may be brought by any person within 45 days after the action sought to be voided has been made public." Under *R.* 4:69–6(b) an action in lieu of prerogative writs "to review ... a resolution by the governing body ... approving ... a recommendation made by the planning board [shall be commenced within] 45 days from the publication of a notice" which states the effect of the resolution.

It is undisputed that the first time plaintiffs became aware of the December 9, 1996 meeting was late in April or early in May 1996. Their attorney was clearly not told that this meeting had taken place when, on December 27, 1996, he inquired "if any action had been taken regarding the Dolente property" and defendant's counsel agreed at oral argument that there was no publication of the results of the December 9, 1996 meeting. The trial court indicated in its written opinion that the information conveyed to plaintiffs' counsel on December 27, 1996 was adequate. We are not so sanguine. Supplying partial information can be as misleading as supplying incorrect information. There was no

litigation in place on December 27, 1996 between these parties and no adversarial relationship existed between them. Plaintiffs were entitled to receive a full and complete answer to their attorney's inquiry on December 27, 1996. It is settled that government has an obligation to " 'turn square corners' " in its dealings with its citizens. *W.V. Pangborne & Co. v. New Jersey Dept. of Transp.,* 116 *N.J.* 543, 561, 562 *A.*2d 222 (1989).

█ It would, in a situation such as the present, clearly subvert the purposes of the OPMA to count the forty-five day period in which to challenge a municipal action from the date of a meeting whose existence had not been disclosed and whose results were not published. To do so would only encourage silence after noncompliance.

Because the trial court concluded that the municipality's actions were valid and the complaint untimely, it did not have occasion to consider the substance of plaintiffs' challenge. We thus reverse and remand for further proceedings.