**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0093-14T3

THE FOUR FELDS, INC., d/b/a
L. EPSTEIN HARDWARE CO., and
REASONABLE LOCK & SAFE CO.
INC.,

    Plaintiffs-Appellants,

v.

CITY OF ORANGE TOWNSHIP and
OAKWOOD TOWERS,

    Defendants-Respondents.

_____

Argued February 7, 2018 — Decided August 2, 2018

Before Judges Fuentes, Koblitz, and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. L-7982-
13.

Jeffrey S. Feld argued the cause for
appellants.

Robert D. Kretzer argued the cause for
respondent The City of Orange Township (Lamb
Kretzer, LLC, attorneys; Robert D. Kretzer,
on the brief).

Robert Beckelman argued the cause for
respondent Oakwood Towers (Greenbaum, Rowe,

Smith & David, LLP, attorneys; Robert Beckelman, on the brief).

PER CURIAM

Plaintiffs, the Four Felds, Inc., d/b/a L. Epstein Hardware Co. and Reasonable Lock & Safe Co. Inc., appeal the August 22, 2014 order that granted summary judgment to defendant Oakwood Towers, dismissing plaintiffs' complaint against it, and a companion order that dismissed the complaint against defendant City of Orange Township (City). Plaintiffs' complaint challenged City Ordinance 39-2013, approved on September 17, 2013, that authorized the City to execute a financial agreement with Oakwood Towers for a tax exemption. Plaintiffs alleged that the City's action was arbitrary, capricious and unreasonable, that it exceeded the City's delegated authority, and that City officials violated their fiduciary duties. Plaintiffs also appeal the April 16, 2014 case management order that denied their request for depositions and stated that the answer to the complaint filed by the City "shall not be an avenue for plaintiff[s] to assert frivolous litigation." We affirm the challenged orders.

Jeffrey S. Feld, Esq., on behalf of himself and his parents' businesses, has been in litigation with the City and various redevelopers for years. In a previous unpublished case, we commented on his mode of litigation, which applies equally here.

Feld v. City of Orange Twp. (Feld VI and VIII), Nos. A-3911-12 and A-4880-12 (App. Div. Mar. 26, 2015) (slip op. at 3-4).

Plaintiffs own and operate industrial hardware and locksmith businesses in the City. The companies and the property where they are located are owned by Robert and Judith Feld as individuals.

On October 10, 2013, plaintiffs filed a 196-paragraph one-count complaint in lieu of prerogative writs against defendants, seeking to void Ordinance Number 39-2013, "An Ordinance of the City of Orange Township Authorizing the Execution of a Financial Agreement with Oakland Towers Granting a Tax Exemption" (the Ordinance). The complaint also asked for a declaratory judgment under the Long Term Tax Exemption Law (LTTEL), N.J.S.A. 40A:20-1 to -22,[1] citing specifically N.J.S.A. 40A:20-12, and for restraints enjoining the Ordinance. Defendants filed answers to the complaint.

On June 27, 2014, Oakwood Towers filed a motion for summary judgment. The City filed a motion to dismiss the complaint on the same day. Plaintiffs opposed both motions. The trial court granted the motions on August 22, 2014, following oral argument, and dismissed plaintiffs' complaint. The court placed limited findings and conclusions on the record.

---

[1] Enacted by L. 1991, c. 431.

Oakwood Towers is a limited-dividend housing association formed in August 1979, pursuant to the Limited-Dividend Non-Profit Housing Corporation or Association Law (LDL), N.J.S.A. 55:16-1 to -22, repealed by L. 1991, c. 431, § 20 (effective Apr. 1992). Since 1983, it has owned a 236-unit rental apartment complex in the City, the units of which were designated as low and very-low income-restricted affordable housing available exclusively for elderly and disabled residents. In 1977, the property was granted a tax abatement by resolution of the City, which specified that a housing project would be constructed, maintained and operated under the provisions of the LDL and the rules and regulations of the New Jersey Housing Finance Agency (NJHFA). Oakwood Towers would pay an annual charge for municipal services, in lieu of taxes, at an amount "not exceeding the tax on the property on which the development is located for the year in which a mortgage on the development is executed in favor of the N.J.H.F.A., or, an amount not exceeding [6.28%] of the annual gross revenues of the development."

On June 2, 1980, the City and Oakwood Towers executed a Tax Abatement Agreement (1980 Tax Abatement Agreement), providing that it "shall be effective on the date [Oakwood Towers] executes a first mortgage upon the development in favor of the NJHFA and

shall continue for a period of not more than fifty (50) years therefrom nor less than the term of the NJHFA mortgage." This tax exemption "appl[ied] only so long as [Oakwood Towers] or its successors and assigns and the development remain[ed] subject to the provisions of the . . . [LDL], the supervision of [the Public Housing and Development Authority (PHDA) of the Department of Community Affairs (DCA)] and subject to the NJHFA mortgage," but in any event, no longer than fifty years from the effective date of the exemption. If the tax exemption was terminated, the property "shall be taxed as omitted property in accordance with the law." The 1980 Tax Abatement Agreement recited that it was made "pursuant to the authority contained in Section 18 of the [LDL] (N.J.S.A. 55:16-18), Section 30 of the [Housing Finance Agency Law] (N.J.S.A. 55:14J-30),"[2] and the December 6, 1977 Resolution, and with the approval of the NJHFA.

On March 16, 1983, Oakwood Towers and NJHFA entered into a "Housing Assistance Payments Contract" (HAP contract), approved by the United States Department of Housing and Urban Development (HUD), to provide Section 8 "housing assistance payments on behalf of [e]ligible [f]amilies" who leased units in the property. The

---

[2] Repealed by L. 1983, c. 530, § 48 (effective Jan. 1984).

1983 HAP contract was in effect for twenty years but could be renewed for two five-year terms, or until March 2013.

Relevant here, on August 19, 2005, Oakwood Towers refinanced the mortgage for $11,500,000 through a Fannie Mae Multi-Family Mortgage. The New Jersey Housing and Mortgage Finance Agency (NJHMFA)[3] and DCA approved the prepayment of the original loan. Oakwood Towers, NJHMFA, the PHDA and DCA also signed a "Deed Restriction and Regulatory Agreement" (2005 Deed Restriction) on the same date. Under the 2005 Deed Restriction, Oakwood Towers agreed to continue to be subject to NJHMFA policies and regulations regarding income, rents, tenant selection standards, income certification, the fair housing market and transfer of ownership until March 15, 2013. These "covenants, reservations and restrictions" were to run with the land. The mortgage instrument expressly referred to the 2005 "Deed Restriction and Regulatory Agreement." The HAP Contract was collaterally assigned to the lender and Fannie Mae under an assignment.

Prior to the refinancing, an assistant City attorney reviewed the earlier tax abatement, stating in a letter to Oakwood Towers'

---

[3] In 1983, the New Jersey Housing Finance Agency and the New Jersey Mortgage Finance Agency were combined into a single agency, the New Jersey Housing and Mortgage Finance Agency. L. 1983, c. 530, § 4.

attorney on July 22, 2004, that the tax abatement would remain "in full force and effect after the refinancing." The letter noted that no resolution would be necessary because "the limited-dividend general partnership [Oakwood Towers] will not be changing and the transaction will be a 'simple refinancing of the property.'" Also, Oakwood Towers "will not be assigning the tax abatement to another entity."

In 2013, prior to the end of its HAP contract, Oakwood Towers asked the City to extend its tax abatement for another ten years, until 2023, to correspond with its requested extension of the HAP contract. The City approved Ordinance 39-2013 on September 17, 2013. It allowed the City to provide a tax exemption to Oakwood Towers by authorizing the City to execute a financial agreement with Oakwood Towers for a long-term tax exemption under LTTEL "to provide a tax exemption for the provision of housing . . . by an urban renewal entity."

The Ordinance recited that Oakwood Towers agreed with the NJHMFA and the DCA that, "notwithstanding the satisfaction of the First Mortgage Loan, it continued [under the 2005 Deed Restriction] to be subject to applicable NJHMFA regulations for housing projects." The tax abatement was "critical" to Oakwood Towers' ability to maintain the project as low and very low-income housing

A-0093-14T3

for the elderly and disabled. Because the HAP contract was extended to March 2023, the Ordinance authorized the City's mayor to execute the financial agreement that would provide a ten-year tax exemption. That financial agreement would allow Oakwood Towers to continue to operate the project for the low and very-low income elderly and disabled. These commitments "would not be feasible" without the assistance of the tax abatement. The Ordinance also allowed for an increase in the annual service charge, which was "in the best interest of the City." The tax abatement was a "significant inducement" for Oakwood Towers to commit to the HAP program and operate as housing for low and very low income, disabled and elderly residents. According to the minutes, Jeffrey Feld was present at the September 17, 2013 meeting when the Ordinance was adopted, but he did not comment on the Ordinance.

On January 6, 2014, the City and Oakwood Towers signed a Financial Agreement for Long Term Tax Exemption (2014 Tax Exemption) where, under LTTEL, the City provided Oakwood Towers a ten-year tax exemption and Oakwood Towers was required to pay an annual service charge. The City found that the 2014 Tax Exemption would "benefit the City and the community" because it would "assur[e] the continued provision of safe, sanitary and quality low and very-low income affordable housing for elderly and disabled citizens." It found that the benefits of the exemption outweighed

the costs and that the exemption was "important" to the City to provide affordable housing because the exemption would "offset the costs of maintaining" the housing which otherwise would be "an impediment" to its continuation.

In its June 2014 motion to dismiss, the City argued the tax exemption under the 1980 Tax Abatement Agreement was still in effect when the Ordinance was approved. Oakwood Towers contended in its summary judgment motion that the 2014 Tax Exemption was authorized under either LDL or LTTEL. It argued that it relied on the City attorney's 2004 letter and on the NJHMFA's approval of the 2005 refinancing agreement. Oakwood Towers asserted it could not maintain the project without the tax exemption.

Plaintiffs opposed the motions, contending that the tax exemption ended either in 2005, when the property was refinanced, or 2011, when the NJHMFA's mortgage was set to mature. They contended that the City was entitled to take $6 million in "residual receipts" that had been placed in escrow.

Following oral argument on August 22, 2014, the trial court granted both motions and dismissed plaintiffs' complaint, noting that "the people" could rely on what a town official said. The court also said that it ruled previously "that city council members have no duty to answer questions." A citizen's sole remedy for a

council's refusal to answer questions was "to vote differently at the next election."

On appeal, plaintiffs argue that the court's orders are subject to de novo review; too much deference was accorded by the court to City Council; elected officials and attorneys were subject to a higher fiduciary standard of care; the court erred by excusing elected officials from answering questions about the tax exemption; the court abused its discretion in granting immunity to the City and its special counsel; and the court denied plaintiffs a level playing field. We affirm the challenged orders because there is no merit to plaintiffs' arguments.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

When a motion to dismiss a complaint under Rule 4:6-2(e) includes matters outside the pleadings that are not excluded by

the court, "the motion shall be treated as one for summary judgment and disposed of as provided by [Rule] 4:46." The language of Rule 4:6-2 "expressly provides that if any material outside the pleadings is relied on [for] a 4:6-2(e) motion, it is automatically converted into a summary judgment motion." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.1.2 on R. 4:6-2 (2018). The submission of certifications serves to convert a Rule 4:6-2(e) dismissal motion into a motion for summary judgment. Nobrega v. Edison Glen Assocs., 167 N.J. 520, 526 (2001). Thus, we review the City's motion to dismiss as a summary judgment motion and use the same de novo standard for both motions.

There was nothing arbitrary, capricious or unreasonable about the City's adoption of Ordinance 39-2013. Actions of a municipal body are presumed valid and will not be disturbed without sufficient proof that the conduct was arbitrary, capricious or unreasonable. Witt v. Gloucester County Bd. of Chosen Freeholders, 94 N.J. 422, 430 (1983). An ordinance will not be overturned by a reviewing court unless the objector challenging the ordinance can prove that the governing body's action was arbitrary, capricious or unreasonable. Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015). The burden of proof rests with the plaintiffs who challenge the municipal action. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). Here, there were no genuine issues

of material fact that precluded the entry of summary judgment orders dismissing this litigation.

Plaintiffs argue that Oakwood Towers' tax abatement "terminate[d]" when the original NJHFA mortgage was extinguished, contending that "the trial court ignored clear and unambiguous statutory language." It is not clear what statutory language plaintiffs reference. Neither the LDL or the LTTEL required the expiration of this tax exemption. Under the LDL, the tax exemption could extend fifty years. It provided:

> Any exemption from taxation made pursuant to the provisions of this section shall not extend for a period of more than [fifty] years and shall only be effective during the period of usefulness of the project as determined by the authority and shall continue in force only while the project is owned by a housing corporation or housing association formed under this act and regulated by the authority or owned or operated by the authority.
>
> [N.J.S.A. 55:16-18 (repealed 1984).]

Tax exemptions under the LTTEL may not be granted for more than "[thirty-five] years from the date of the execution of the financial agreement." N.J.S.A. 40A:20-13. LTTEL did not affect the tax exemption that Oakwood Towers was granted in 1980.

> An urban renewal entity organized and operating under a law repealed by this act shall not be affected by that repeal. Any financial agreement entered into and any tax exemption granted or extended shall remain binding upon the urban renewal entity and the

12

> municipality, subject to modification by mutual written consent, as if the law under which it was entered into, or granted or extended, had not been repealed by this act.
>
> [L. 1991, c. 431, § 20(b).[4]]

It was not arbitrary, capricious or unreasonable for the City to extend the tax exemption by the properly adopted Ordinance. Plaintiffs do not challenge that LDL allowed for a fifty-year tax abatement. Under LTTEL, a "qualified subsidized housing project" can be exempted from taxation "for such period of time as the federal agency subsidizing the project may require as a condition of the subsidy" and the exemption can be extended "to secure a continuation of federal subsidies after the expiration of the initial subsidy period." N.J.S.A. 40A:20-13.1. The ten-year tax exemption granted by Ordinance 39-2013 stated that it was pursuant to authority set forth in LTTEL.

Plaintiffs argue that the 1980 tax exemption expired when the mortgage was refinanced, citing to one portion of the 1980 Tax Abatement Agreement that used the phrase "subject to the NJHFA mortgage" to support their argument. Plaintiffs give no reason why the tax exemption should have expired due to refinancing.

---

[4] This provision has been amended twice. See L. 1992, c. 79, § 56, and then by L. 2009, c. 180, § 1(b). The amendments are not relevant for this case.

Nothing about the project had changed. Oakwood Towers continued to function as affordable housing for low and very low-income seniors subject to regulation by NJHMFA and needed the exemption to continue to function in that capacity. Those facts were not disputed by plaintiffs. The 2005 Deed Restriction simply continued the same type of regulatory requirements that NJHFA had included in its 1981 mortgage with Oakwood Towers. The Fannie Mae Mortgage referenced the 2005 Deed Restriction with NJHMFA where Oakwood Towers continued to be bound by NJHMFA regulations and the HAP contract. Therefore, plaintiffs do not show why the source of the loan would affect the tax abatement when the conditions imposed by NJHMFA as part of the loan continued to apply to Oakwood Towers. Plaintiffs, thus, have not met their burden to overcome the presumed validity of the Ordinance.

The City did not exceed its delegated authority by approving the Ordinance that allowed the City to contract with Oakwood Towers and provide a tax exemption. Plaintiffs contend "the local governing body failed to create a legislative record sufficient to support their legislative/discretionary action." However, not only was there statutory authority to grant a tax exemption, but the Ordinance and subsequent 2014 Tax Exemption stated the reasons for approval and included findings by the City in support of the

agreement. This was consistent with the requirements of LTTEL. See N.J.S.A. 40A:20-11.

Plaintiffs contend that defendants violated their fiduciary duties by "conceal[ing] material information and documentation from stakeholders." See Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474 (1952) (stating on the facts of that case that public officers "stand in a fiduciary relationship to the people whom they have been elected or appointed to serve"). Plaintiffs allege defendants used public monies to "defend a negligence action against certain City elected officials, city employees and retained professionals"; however, defendants provided no factual basis at all for these claims.

Plaintiffs claim that they were "denied reasonable notice and an opportunity to be heard" and that the Ordinance should be declared void under the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-15. They do not state which provisions of the OPMA were violated. "[P]ublic bodies are given discretion in how to conduct their meetings." Kean Fed'n of Teachers v. Morell, __ N.J. __, __ (2018) (slip op. at 5) (citing N.J.S.A. 10:4-12(a)). "Nothing in this act shall be construed to limit the discretion of a public body to permit, prohibit, or regulate the active participation of the public at any meeting, except that "municipal governing bodies and local boards of education are required to set aside time for

15

public comment." N.J.S.A. 10:4-12(a). Plaintiffs had notice of the meeting and an opportunity to comment. According to the minutes, Feld was present at the meeting when the Ordinance was adopted. He did not express comments about this Ordinance. On this record, plaintiffs have not alleged any facts that would support an OPMA claim.

Plaintiffs contend the City granted immunity to itself and outside counsel against frivolous and vexatious litigation. This argument lacks any support. The April 16, 2014 case management order simply stated that the City's answer "shall not be an avenue for plaintiff to assert frivolous litigation." Plaintiffs cited no evidence to suggest this provided immunity.

Plaintiffs contend they were denied a "level playing" field. Although it is not clear what legal claims plaintiffs are asserting, plaintiffs were not entitled to trial-like opening and closing statements, as they allege; they did not establish how depositions of the mayor or other elected officials were relevant to the Ordinance; and there were no genuine issues of material fact that would have required a plenary hearing or precluded the orders granting summary judgment.

We agree that the trial court did not satisfy Rule 1:7-4 because it said little about its findings or conclusions. In addition, there was no authority for the court to call upon members

A-0093-14T3

of the audience during the motion for their opinions. However, because our review is de novo, there is no need for a remand.[5]

After carefully reviewing the record and the applicable legal principles, we conclude that plaintiffs' further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] Plaintiffs raised an issue about an error involving "net profit"/surplus monies. The record is inadequate for us to address this issue.