**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0381-19

75 PROSPECT HOLDING
COMPANY, LLC,

     Plaintiff-Appellant,

v.

CITY OF EAST ORANGE and
CITY OF EAST ORANGE
RENT CONTROL BOARD,

     Defendants-Respondents.

_____

Submitted November 4, 2021 – Decided December 9, 2021

Before Judges Hoffman, Suter, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5254-18.

Ehrlich, Petriello, Gudin & Plaza, attorneys for appellant (Matthew A. Sebera and Derek D. Reed, on the brief).

Christopher M. Pisacane, attorney for respondents.

PER CURIAM

Plaintiff 75 Prospect Holding Company, LLC, appeals the August 15, 2019, orders denying its motion for summary judgment and granting the motion by defendants City of East Orange (the City) and City of East Orange Rent Control Board (the Rent Board) to dismiss plaintiff's verified complaint in lieu of prerogative writs. We affirm the orders.

I.

In December 2014, Veronica Thomas leased an apartment for $2,700 per month from 75 Prospect, LLC (prior owner) in a residential apartment building in the City. The prior owner filed a report regarding rents (rent roll) with the City in October 2015, which showed the registered rent for Thomas's apartment was $2,700 per month.

On October 26, 2016, Thomas signed a lease with the prior owner, increasing her base monthly rent to $2,808 per month for twelve months starting on May 1, 2016, and continuing to April 30, 2017. This was a four percent increase over the prior rent. The prior owner did not serve Thomas with a notice to quit or file an updated rent roll in September 2016, or at any time after that.

In May 2017, plaintiff purchased the apartment building and land where Thomas was a tenant. Plaintiff alleged it filed a rent roll with the City in September 2017, but a copy was not produced as part of the record. Thomas

learned her rent had increased. She testified she did not receive a notice to quit. Plaintiff acknowledged it reduced the rent to $2,808 when it "discovered that it could not substantiate the increase from $2,808 to $2,948.40."

On September 26, 2017, Thomas filed a complaint with the Rent Board alleging an "excessive increase" in rent "without notice to quit." On October 24, 2017, a rent regulatory officer with the City issued a preliminary decision that plaintiff violated City of East Orange Municipal Code (Code) Section 218-7 by charging excessive rent for a six-month period from May 1, 2017, to October 1, 2017. She found "[t]he correct rental amount . . . should be" $2,489.76 per month and that $1,909.44 was to be rebated for the overcharge.

Plaintiff appealed the preliminary decision to the Rent Board in November 2017. At the hearing before the Rent Board in May 2018, plaintiff argued Thomas' complaint was time barred under Code Section 218-13(A). Plaintiff also argued that Thomas entered into "a whole new lease contract" for a rent of $2,808 per month. Because of this, plaintiff contended a notice to quit was not required. The new lease amount was just a four percent increase over the prior rent of $2,700. Thomas argued her rent should be $2,489.76 as determined by the rent regulatory officer.

A-0381-19

The Rent Board voted to establish $2,700 per month as Thomas's base rent. In June 2018, Rent Board Resolution #2018-04 overturned the preliminary decision of the rent regulatory officer and established the base rent at $2,700 per month effective May 2017.

In July 2018, plaintiff filed a verified complaint in lieu of prerogative writs against defendants, alleging the Rent Board's action was arbitrary and capricious when it lowered Thomas's rent to $2,700 per month. Plaintiff argued Thomas's application was barred by Code Section 218-13(A)(1) because her complaint about an unlawful rent increase was not filed within twelve months of its effective date as required by the Code.

In January 2019, plaintiff filed a motion for summary judgment and defendants cross-moved to dismiss. The court allowed supplemental briefing, conducting oral argument in April[1] and May 2019.

Plaintiff acknowledged a notice to quit was not served in connection with the May 2016 lease. It argued the new lease did not require a notice to quit and operated as a novation of the prior lease.

Plaintiff also argued Thomas' action was time barred by Code Section 218-13(A)(1). Because the lease with monthly rent of $2,808 commenced on May

---

[1] This transcript was not provided.

A-0381-19

1, 2016, Thomas had until May 1, 2017, to file a complaint about excessive rent. She filed on September 26, 2017, which plaintiff argued was out of time.

Defendants argued there was substantial evidence that two sections of the Code were violated. Specifically, the landlord failed to serve Thomas with a notice to quit in violation of Code Section 218-14(a) and failed to file an updated rent roll in violation of Code Section 218-12.

Defendants argued the statute of limitations was not applicable because Thomas's lease was month-to-month starting in May 2017. See N.J.S.A. 46:8-10 (providing that "the tenancy created by or resulting from acceptance of rent by the landlord [from a holdover tenant] shall be a tenancy from month-to month in the absence of an agreement to the contrary."). Defendants further argued the Rent Board was authorized to waive the statute of limitations if the rent increase was unlawful. Defendants contended the statute of limitations was tolled by the discovery rule. Thomas did not learn about the illegal rent increase until plaintiff purchased the property in May 2017, and an investigation was conducted. Finally, defendants argued summary judgment was not appropriate in a prerogative writs matter.

The trial court denied summary judgment and dismissed the complaint on August 15, 2019. In its oral opinion, the trial court concluded there were two

A-0381-19

Code violations: "first, the tenant was never served with a [n]otice to [q]uit, second, a rent roll had not been filed for the premises since 2014." The court found that "generally when a landlord seeks to increase the rent of an existing tenant at the end of a rental term," a notice to quit is required. The trial court disagreed with plaintiff's argument that because the parties voluntarily entered into a new lease, a notice to quit was not necessary. Plaintiff never addressed the argument that Thomas had a month-to-month tenancy after May 2017 and how that applied in this context. There also was no evidence a rent roll was filed in September 2017 by plaintiff as required by the Code.

The trial court determined the time bar did not apply here because of these violations and because the Rent Board had the ability to waive the time bar pursuant to Code Section 218-13(C). The Code provides for a liberal interpretation of its provisions. The court found the Rent Board did not act in an arbitrary, capricious or unreasonable manner because the landlord failed to serve a notice to quit, "which [the] [c]ourt [found] to be a required prerequisite to raising the rent . . . ." The Rent Board's decision was based on "competent testimony and evidence in its exercise of discretion in waiving the time limitation and ruling as it did . . . ."

On appeal, plaintiff argues the following:

6

POINT I

THE TRIAL COURT ERRED IN FINDING THAT THE FORMER OWNER OF THE PREMISES WAS OBLIGATED TO SERVE A NOTICE TO QUIT TO EFFECT A RENT INCREASE WHERE THE TENANT RECEIVING THE INCREASE SIGNED AN ENTIRELY NEW LEASE AGREEMENT.

POINT II

THE TRIAL COURT ERRED BY FINDING THAT SECTION 218-13(C) OF THE EAST ORANGE MUNICIPAL CODE ENTITLED THE EAST ORANGE RENT CONTROL BOARD TO WAIVE THE LIMITATIONS PERIOD ON FILING COMPLAINTS SET FORTH IN SECTION 218-13 (A).

POINT III

THE TRIAL COURT ERRED BY RULING THAT THE EAST ORANGE RENT CONTROL BOARD'S DECISION NOT TO APPLY THE TIME LIMITATION ON THE FILING OF RENT CONTROL COMPLAINTS WAS JUSTIFIED BY THE FAILURE TO SERVE A NOTICE TO QUIT.

II.

Actions of a municipal body are presumed valid and will not be disturbed without sufficient proof that the conduct was arbitrary, capricious or unreasonable. Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015); Witt v. Gloucester Cty. Bd. of Chosen Freeholders, 94 N.J. 422, 430 (1983). The

7

burden of proof rests with the plaintiff who challenges the municipal action. Price v. Himeji, LLC, 214 N.J. 263, 284 (2013). As a reviewing court, we are not to substitute our judgment for that of the local board unless there is a clear abuse of discretion. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 82 (2002) (citing Med. Realty Assocs. v. Bd. of Adjustment, 228 N.J. Super. 226, 233 (App. Div. 1988)). Like the trial court, we owe no deference to the Rent Board's legal interpretations, including its construction of its ordinances. See, e.g., Osoria v. W.N.Y. Rent Control Bd., 410 N.J. Super. 437, 443 (App. Div. 2009) ("When interpreting an ordinance, our scope of appellate review is plenary."); accord Schulmann Realty Grp. v. Hazlet Twp. Rent Control Bd., 290 N.J. Super. 176, 184 (App. Div. 1996).

## A.

Plaintiff argues the trial court erred in determining that a notice to quit was required when the tenant signed a new written lease agreement that increased the rent. It contends that the holding in Harry's Village, Inc. v. Egg Harbor Township, 89 N.J. 576, 579 (1982), does not apply where the parties reached a mutual agreement by signing a new lease, and the increase was within the amount permitted by the Code.

"In general, the notice to quit protects the interests of both landlord and tenant." Id. at 584. "A purpose of a notice to quit is to give a tenant time 'to decide whether to accept changes in the rental terms or to seek alternate living arrangements.'" J.M.J. N.J. Properties, Inc. v. Khuzam, 365 N.J. Super. 325, 336 (App. Div. 2004) (quoting Harry's Village, 89 N.J. at 584). "It 'assures tenants of time to consent to changes in their tenancy and protects them from arbitrary, unilateral changes imposed by landlords.'" Ibid.

"To increase the rent of a month-to-month tenant, the landlord must serve a notice to quit terminating the old tenancy and another notice offering a new tenancy at an increased rent." Harry's Village, 89 N.J. at 583. If these requirements are not met, "any attempt to increase the rent is ineffective and the tenancy continues at the old rental term." Ibid. However, where "a landlord gives a proper notice to quit and a notice of rent increase, a tenant, by holding over, creates a new tenancy at the increased rental." Ibid. (citing Stamboulos v. McKee, 134 N.J. Super. 567, 571 (App. Div. 1975)). Therefore, the Court held in Harry's Village that "a notice to quit is required to effect a rent increase in any periodic tenancy, including a tenancy in a rent-controlled municipality." Id. at 585. Even if a rent control board were to authorize an increase, "a landlord must still comply with requirements of state statutory and common law, which

include service of a valid notice to quit and notice of rent increase before imposing an increased rent on tenants." Ibid.

Under the Code, "[e]ach landlord is required to complete a rental increase application and pay a nonrefundable application fee to the City." Code §218-10(E). The application will not be processed until the landlord ". . . 3) delivers the notice to quit, under § 218-12, to the City's Rent Control Office." Ibid. Code Section 218-12(A) provides "[a]ny owner, landlord or agent or employee of a landlord seeking an increase in rent shall give the affected tenant written notice of termination of the existing lease or tenancy (commonly called 'notice to quit') [sixty] days prior to the increase." This notice also is to include "[t]he actual dollar amount of the proposed increase." Code §218-12(A)(5).

Here, although the rent increase from $2,700 per month to $2,808 per month was included in the written lease, the former owner did not serve Thomas with a notice to quit as required under the Code and under Harry's Village. Neither the Code nor Harry's Village distinguished between rent increases effected by written versus oral leases. The notice to quit requirement applies to "effect a rent increase in any periodic tenancy." Harry's Village, 89 N.J. at 585. This is not an extension of Harry's Village as plaintiff contends. The Court was quite clear as to the requirements to increase rent. Thus, the trial court was

10

simply applying <u>Harry's Village</u>, not extending it. Accordingly, the Rent Board was not arbitrary or capricious in invalidating the rent increase, and the trial court was correct to dismiss plaintiff's complaint.

B.

Plaintiff argues the trial court erred by finding the Rent Board had authority to waive the one year filing requirement set forth in Code Section 218-13(A). Although plaintiff acknowledges Thomas had twelve months to challenge the rent increase, it argues the lease commenced May 1, 2016, and expired twelve months later on May 1, 2017. Because Thomas's complaint was filed on September 26, 2017, plaintiff argues this filing was out of time. Plaintiff argues the trial court's application of Code Section 218-13(C) was erroneous. It contends this effectively removes any limitations periods from the Code because any "illegal" increase in rent would have no time bar. It argues also that the Rent Board never mentioned this Code Section in its decision.

Code Section 218-13(A)(1) provides "Time Limitations. (1) Complaints by either the landlord or the tenant may not be filed more than [twelve] months after the effective date of the increase involved, except as otherwise provided in this chapter." However, Code Section 218-13(C) permits a waiver of the time bar under certain circumstances. Specifically,

11

> Absent the filing of a complaint pursuant to the applicable provisions of this chapter, payment of a rental increase for [twenty-four] consecutive months or more shall be construed to be an agreed increase and not subject to the provisions of this chapter, except when the landlord in violation of this chapter does not inform or misinforms the tenant concerning the rent paid by the prior tenant, or <u>in any manner illegally increases the tenant's rent</u>, the Board shall waive the limitations period, and then accept, hear and adjudicate the matter based on the landlord's noncompliance with the provisions of this chapter.
>
> [Code § 218-13(C) (emphasis added).]

At the Rent Board hearing, Thomas testified as to the landlords' Code violations regarding both the failure to serve a notice to quit and the failure to file an updated rent roll. Plaintiff did not dispute that the last registered rent roll for the apartment was in 2015, for $2,700 per month and acknowledged the lack of a notice to quit. Both facts established Code violations before the Rent Board. Therefore, under Section 218-13(C), the Rent Board was authorized to waive the statute of limitations because the increase was done "illegally" in violation of the Code. We agree with the trial court that the Code can be interpreted in this manner.

A liberal construction of the Code supports the same outcome. Thomas signed the new lease with the prior owner on October 26, 2016, which was effective retroactively to May 1, 2016. We assume Thomas's prior lease term

12

ended on April 30, 2016, or there would be no need to sign the lease on October 26, 2016, with an effective date six months earlier. The record supports the conclusion that Thomas was a month-to-month tenant from the beginning of May 1, 2016, until the new lease was signed on October 26, 2016.

"Our cases regard '[a] month-to-month tenancy [as] a continuing relationship that remains unabated at its original terms until terminated by one of the parties.'" Chase Manhattan Bank v. Josephson, 135 N.J. 209, 224 (1994) (quoting Harry's Village, 89 N.J. at 583). However, "[t]o increase the rent of a month-to-month tenant, the landlord must serve a notice to quit terminating the old tenancy and another notice offering a new tenancy at an increased rent." J.M.J., 365 N.J. Super. at 332 (quoting Harry's Village, 89 N.J. at 583). If there is proper notice and the tenant then holds over, "a new tenancy is created at the increased rent." Ibid.

If the new lease for Thomas were to terminate the old month-to-month tenancy, it should have been on October 26, 2016, when she signed it. This would have given Thomas until October 26, 2017, to file her complaint for excessive rent. Thomas filed on September 26, 2017, which was within twelve months from the date of the new lease. Plaintiff cites no authority to support its argument that Thomas should receive six months to file a complaint instead of

twelve months. Although the Code section in issue does provide that the twelve-month period runs from the "effective" date of the lease, it also does not address the situation here, where the lease purports to be retroactive and where there was a month-to-month lease in effect immediately prior to that. Construing this ambiguity in Thomas's favor, we agree that her complaint was timely filed.

C.

Plaintiff argues the trial court erred by not applying the time bar because there was no testimony whether a notice to quit was served by the former owner when rent was increased from $2,700 to $2,808. This is inaccurate. Thomas testified the notice to quit was not served. Ron Cutas, one of the new owners, advised the Rent Board that after they closed on the property in May 2017, they learned the prior owner "didn't actually follow the protocol that he's supposed to and give those notices." He could not find proof that the prior owner distributed notices to quit.

Plaintiff's further arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0381-19